**UNITED STATES of America, Appellee,**

v.

**Brian Palmer NELSON, Appellant.**

**No. 77–1584.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 9, 1978.

Decided Feb. 1, 1978.

Luther A. Granquist, Legal Aid Society, Minneapolis, Minn., argued and filed brief, for appellant.

Daniel M. Scott, Asst. U. S. Atty., Minneapolis, Minn. (argued), and Andrew W. Danielson, U. S. Atty., Minneapolis, Minn., on brief, for appellee.

Before BRIGHT, STEPHENSON and HENLEY, Circuit Judges.

STEPHENSON, Circuit Judge.

Appellant Brian Palmer Nelson appeals from his conviction after a trial to a jury on 16 counts of violating the wire fraud statute, 18 U.S.C. § 1343, and on one count of conspiracy in violation of 18 U.S.C. § 371. Appellant was sentenced to five years on each count, all to be served concurrently.[1]

On this direct appeal appellant raises three issues for consideration by this court. He claims that the conviction must be reversed because the trial judge communicated with the jury in the absence of the defendant and his trial counsel, his right to a fair trial guaranteed by the fifth amendment was violated by reason of certain comments made and questions asked by the trial judge, and evidence of other crimes

---

1. The Honorable Miles Lord, United States District Judge for the District of Minnesota, presided at the trial and entered the sentence.

was erroneously allowed to be placed before the jury. We affirm the conviction.

On March 15, 1977, the grand jury returned a 17-count indictment charging appellant and four other persons, Wayne Anderberg, Austin Burgi, Bruce Nelson and Gary Nelson, with wire fraud and conspiracy to commit wire fraud. Subsequently, the other four indictees entered pleas of guilty to various charges and were sentenced. Appellant entered a plea of not guilty and trial was commenced on April 27, 1977. On May 6, 1977, a verdict of guilty on all counts was returned by the jury.

The evidence presented at trial showed that in 1974 appellant was employed by Merchandise Liquidators, Inc. (MLI), a company owned by Wayne Anderberg and Gary Nelson, a brother of the appellant. In late January or early February of 1974 Gary Nelson and Anderberg attempted to bolster their floundering business by stealing automobiles, cutting them up, and selling the parts to various parts dealers in the area. In March of 1974 Gary Nelson and Anderberg quit cutting up the cars they stole and began to purchase wrecked and salvage cars. They would take the vehicle identification number from a salvage car and reinstall it on a stolen car that closely matched the description of the salvage car. They would then sell the stolen car, using the registration of the salvage car that they had purchased. At first Gary Nelson and Anderberg were the primary parties involved in the scheme. Later Bruce Nelson, another brother of appellant, became involved in the stealing of automobiles by acting as a lookout for Anderberg and Austin Burgi began stealing cars on contract. Appellant was the bookkeeper for MLI during the time that cars were being stolen and resold.

Initially the salvage automobiles were purchased from junkyards in the Twin Cities and salvage pools in the area. However, from early 1975 until the end of 1976 the major portion of the titles were obtained from the South Des Moines Auto Parts Company in Des Moines, Iowa. During that time numerous long distance calls were made to the South Des Moines Auto Parts Company. These calls, which are the basis of the 16 counts of wire fraud, were placed so that arrangements could be made for Anderberg to go to Des Moines to buy a piece of salvage or to find out what salvage was available. Anderberg testified that during this time appellant learned of the illegal business that was being conducted and was present during at least two telephone conversations between Anderberg and the employees of the South Des Moines Auto Parts Company. In these conversations Anderberg confirmed that certain titles were available and could be picked up.

In addition, appellant worked on reconditioning and painting some of the stolen cars, and in return he received a 1973 Maverick which had been stolen by Anderberg and Gary Nelson. Anderberg testified that appellant switched parts on this car with another Maverick, redid the interior, and asked Anderberg to get a title for it from South Des Moines Auto Parts Company so that appellant could drive it and resell it. Anderberg eventually located a title, and he and appellant went to Des Moines where the title and a piece of salvage were purchased and brought back to Minnesota. Appellant also sold some of the stolen cars to outside parties for which he received a commission from NSA Corporation, another company owned by Anderberg and Gary Nelson which was formed in 1975. Appellant was not an employee of NSA.

It was also established that appellant delivered a stolen car to Mason City, Iowa, and another to an auction in Minneapolis. Anderberg estimated that more than 100 cars had been stolen and resold as part of the entire scheme.

■ Appellant's first claim of error involves an alleged impropriety in an exchange of communication between the court and the jury which occurred while the jury was engaged in its deliberations and without the presence of appellant or his counsel. Rule 43 of the Federal Rules of Criminal Procedure requires the presence of the defendant "at every stage of the trial," including presence during communication

between a trial court and a deliberating jury. *Rogers v. United States,* 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975).

The record reveals that in the present case some time after the jury retired to deliberate at 3:48 p. m. on May 6, 1977, the jury sent the following question to the court:

> If we find him guilty of conspiracy, is he automatically guilty of all counts of wire fraud, or how do we determine guilt or non-guilt on each of the other 16 counts?

At 5:35 p. m. the trial judge, in chambers, talked with appellant's counsel by speaker telephone in the presence of the prosecuting attorney. Appellant's counsel indicated he was satisfied with this procedure. The question was read to the attorneys and the court's response was discussed.[2] Appellant's counsel agreed to waive his client's presence and further agreed to the submission of the response prepared by the court, saying it was substantially what had been said in the original instruction. The response was then delivered to the jury by a law clerk in written form. Before the verdict was returned, both attorneys reaffirmed their approval of the court's response to the jury's question by signing the statement which had been handed to the jury. No objection was raised prior to this appeal.

Thus, it appears beyond dispute from the record that the trial court erred in communicating with the jury outside of the presence of appellant. However, deprivation of the right of presence guaranteed by Rule 43 is subject to the rule of harmless error provided in Rule 52(a) of the Federal Rules of Criminal Procedure. The error may be harmless if there does not exist "any reasonable possibility of prejudice." *United States v. Mesteth,* 528 F.2d 333, 335 (8th Cir. 1976), *quoting from United States*

*v. Reynolds,* 489 F.2d 4, 8 (6th Cir. 1973), cert. denied, 416 U.S. 988, 94 S.Ct. 2395, 40 L.Ed.2d 766 (1974). *See also Rogers v. United States,* 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975); *United States v. Diggs,* 173 U.S.App.D.C. 95, 522 F.2d 1310 (1975); *United States v. Arriagada,* 451 F.2d 487 (4th Cir. 1971), cert. denied, 405 U.S. 1018, 92 S.Ct. 1300, 31 L.Ed.2d 481 (1972); *United States v. Schor,* 418 F.2d 26 (2d Cir. 1969); *Ware v. United States,* 376 F.2d 717 (7th Cir. 1967); *Walker v. United States,* 116 U.S.App.D.C. 221, 322 F.2d 434 (1963), cert. denied, 375 U.S. 976, 84 S.Ct. 494, 11 L.Ed.2d 421 (1964); *Jones v. United States,* 299 F.2d 661 (10th Cir.), cert. denied, 371 U.S. 864, 83 S.Ct. 123, 9 L.Ed.2d 101 (1962).

In the present case the court's response to the jury was approved and appellant's presence was waived by appellant's counsel over the telephone. Furthermore, the response was substantially a repetition of the instructions which had been given earlier by the court and involved a question of law, not fact. Thus, appellant's presence would have been no aid to his defense, and it is apparent that he suffered no prejudice. *See United States v. Arriagada, supra,* 451 F.2d at 488–89; *Jones v. United States, supra,* 299 F.2d at 662. Finally, the determination of harmless error is supported by the willingness of appellant's counsel to signify his approval of the response by signing it before the return of the verdict and the absence of any objection prior to the filing of this appeal. *See United States v. Diggs, supra,* 173 U.S.App.D.C. at 105, 522 F.2d at 1320; *United States v. Arriagada, supra,* 451 F.2d at 489; *Walker v. United States, supra,* 116 U.S.App.D.C. at 222, 322 F.2d at 435. Our review of the record here convinces us that there is no reasonable possibility of prejudice to appellant in the instant case, and thus the error was harmless.

---

2. The response was as follows:

A separate determination must be made as to each count in the indictment. The guilt of the defendant for conspiracy does not dictate the result in the wire fraud counts. You are to consider as to each wire fraud count whether or not at the time the call was made

the Government has proven beyond a reasonable doubt that the call was made in furtherance of a scheme to defraud and whether or not at the time the defendant was participating as a member of the group which had as its plan and design such a scheme to defraud.

Appellant next argues that he was denied his fifth amendment right to a fair trial because of the timing of and qualifying language contained in certain instructions to the jury and because the trial court made an inaccurate comment on the evidence and asked certain questions of the defendant which put the judge in the role of advocate.

■ A federal district judge is more than a mere moderator and has an active duty to see that any trial, including a criminal one, is fairly conducted and the issues clearly presented. *United States v. Cuevas,* 510 F.2d 848, 850 (2d Cir. 1975); *United States v. McCord,* 166 U.S.App.D.C. 1, 14, 509 F.2d 334, 347 (1974), *cert. denied,* 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1975). *See* Fed.R.Evid. 611. Rule 614(b) of the Federal Rules of Evidence expressly allows the court to personally interrogate witnesses regardless of who has called them. However, "[t]he trial court commands the attention and respect of the jury. Great care must be exercised so as to avoid the appearance of advocacy for a particular party." *United States v. McColgin,* 535 F.2d 471, 475 (8th Cir. 1975), *cert. denied,* 429 U.S. 853, 97 S.Ct. 145, 50 L.Ed.2d 128 (1976), *quoting from Scruggs v. United States,* 450 F.2d 359, 363 (8th Cir. 1971), *cert. denied,* 405 U.S. 1071, 92 S.Ct. 1521, 31 L.Ed.2d 804 (1972). *See also United States v. Carter,* 528 F.2d 844, 851 (8th Cir. 1975), *cert. denied,* 425 U.S. 961, 96 S.Ct. 1745, 48 L.Ed.2d 206 (1976).

■ We are satisfied that when the trial court's comments, questions and instructions are considered in the context of the entire trial, the bounds of judicial impartiality were not exceeded. The trial court repeatedly instructed the jury that its questions were not to be regarded as expressing an opinion as to guilt or innocence and that the court's comments on the evidence were not evidence, but merely its recollections, which may have been mistaken. The jury members were instructed to rely on their own recollections. In any event, no objections were made by appellant's counsel, and the comments and questions by the trial court do not constitute plain error under Rule 52(b) of the Federal Rules of Criminal Procedure. Review of the entire record in this case indicates that evidence of appellant's guilt is strong. Error, if any, was not prejudicial.

■ The final issue raised by appellant on this appeal is whether evidence of criminal activity other than that of wire fraud with which appellant was charged was erroneously placed before the jury. Appellant argues that although the indictment charged that both the wire fraud scheme and the conspiracy started on January 1, 1974, there is no evidence to substantiate the existence of a wire fraud scheme until 1975. Consequently, it is claimed by appellant that the evidence relating to the stealing of cars in 1974 was evidence of other criminal activity (state offenses) which should not have been admitted at trial because the evidence was not clear and convincing. *See United States v. Maestas,* 554 F.2d 834, 837 (8th Cir. 1977); *United States v. Conley,* 523 F.2d 650, 653 (8th Cir. 1975), *cert. denied,* 424 U.S. 920, 96 S.Ct. 1125, 47 L.Ed.2d 327 (1976).

■ This argument is without merit. As the government aptly notes, the evidence presented concerning the existence of a scheme to steal and resell cars prior to the placing of the long distance telephone calls in 1975 and 1976 was appropriately introduced to prove one of the elements of the offense with which appellant was charged, i. e., a scheme to defraud. *See Isaacs v. United States,* 301 F.2d 706, 726 (8th Cir.), *cert. denied,* 371 U.S. 818, 83 S.Ct. 32, 9 L.Ed.2d 58 (1962). The evidence introduced to prove a fraudulent scheme may go back to the beginnings of the scheme and even before it was fully formed. *United States v. Hickey,* 360 F.2d 127, 139–40 (7th Cir.), *cert. denied,* 385 U.S. 928, 87 S.Ct. 284, 17 L.Ed.2d 210 (1966). Thus, there was no "other crimes" evidence presented in this case.

Affirmed.