UNITED STATES of America, Appellee,

v.

**Robert Arnold VIK, Appellant.**

No. 80–2084.

United States Court of Appeals,
Eighth Circuit.

Submitted April 17, 1981.

Decided July 27, 1981.

J. Whitfield Moody, U. S. Atty., Robert G. Ulrich (argued), Asst. U. S. Atty., Springfield, Mo., for appellee.

Before LAY, Chief Judge, GIBSON, Senior Circuit Judge, and BRIGHT, Circuit Judge.

PER CURIAM.

Robert Arnold Vik appeals his conviction, pursuant to 18 U.S.C. § 2423, for willfully and knowingly transporting two minor girls in interstate commerce with the intent that the girls engage in prostitution and prohibited sexual conduct. Vik was found guilty by a jury and sentenced to the custody of the Attorney General for a period of six years.

Vik appeals on the grounds that it was error for the trial court[1] (1) to refuse to allow a psychologist to offer an opinion on the personalities of the victims, who testified at trial, (2) to restrict the use of an FBI report during the cross-examination of a witness, (3) to allow certain witnesses to testify about prior acts and statements of defendant Vik, (4) to refuse to give a jury instruction on the credibility of prosecuting witnesses, and (5) to deny Vik's motion for judgment of acquittal which was offered on the ground of insufficiency of evidence. For the reasons stated below, we affirm.

Very briefly, the evidence adduced at trial indicated that Vik and a cohort of his named James Price met two fourteen-year-old girls on or about March 31, 1979, in Carthage, Missouri. They later left Carthage in Price's van.

Eventually Vik, Price, and the two girls drove to Oklahoma, where they stayed for approximately twenty-four hours, and then on to Chicago, Illinois. One of the girls testified that, while in Oklahoma, she asked to be taken back home; Vik answered that the girls would have to go to Chicago and earn the money to go home.

Raymond C. Conrad, Federal Public Defender, W. D. Mo., Gregory K. Johnson, R. Steven Brown, Asst. Federal Public Defenders, Springfield, Mo., for appellant.

1. The Honorable Russell G. Clark, Chief Judge, United States District Court for the Western District of Missouri.

While in Chicago, the girls were forced by Vik to prostitute themselves. When they resisted, Vik, on several occasions, hit and injured them. The girls were forced to have sexual relations with men who then gave them pills which the girls took back to Vik, who "cooked" the pills and injected the substance into himself and the girls.

After Vik, Price, and the two girls had been in Chicago for close to two weeks, Vik, along with Price and another man known by Vik, drove to the apartment of an acquaintance of Vik's, Frank Darnell. The girls were given money and told to go into Darnell's apartment and purchase drugs. The girls did not return.

Darnell testified that when the girls came to his apartment to purchase drugs, one of them had a black eye which was the result of a beating inflicted upon her by Vik. Darnell decided to help the girls and asked them if they wanted to go home. They said that they did.

Darnell hid the girls, and when Vik came to his door to get them Darnell said the girls had run out the back door. Vik then searched the neighborhood trying to find them.

Darnell fed the girls and allowed them to stay the night at his apartment. The next day, he took them to the bus station and gave them money to get home.

When the girls returned to Carthage, they were taken into custody by juvenile authorities. The girls fabricated a story, which they told to the authorities, about having been kidnapped by four men. Apparently the girls were frightened of what would happen to them if they told the truth. About four days later, they told the law enforcement authorities the scenario established at trial.

## I.

During defendant's case-in-chief, his counsel attempted to call Mr. Mason Dikeman, a clinical psychologist, to give his views of the personality types and veracity of the victims. The court refused to allow Mr. Dikeman to testify. The defense made a formal offer of proof, calling Mr. Dikeman to testify outside the hearing of the jury. It was established that Dikeman had spent a total of two hours with one of the girls and one hour with the other in April 1979. He was acting, at the time, as consultant for the juvenile court. Vik appeals the court's refusal to admit Dikeman's testimony.

■ The decision of whether to admit expert testimony is left to the sound discretion of the trial court. "[T]he trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous." *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1961). The trial court did not abuse its discretion in refusing to admit the expert testimony at issue here. Mr. Dikeman's opinions about the girls were admittedly diagnostic impressions. The court acted within its proper scope of discretion in determining that an insufficient foundation made Mr. Dikeman's impressions too speculative for admission.

## II.

■ During the cross-examination of James Price, Price was asked if he had been informed by the FBI that he would not be prosecuted. Price answered that he had not been told that he would not be prosecuted. Defense counsel then tried to admit an FBI report made by the agent who had interviewed Price. The court refused to allow counsel to use the report in the proffered manner. Vik appeals the trial court's decision on the ground that it limited his right to cross-examine Price and thereby precluded the possibility of showing that Price was biased and had a motive to lie. The FBI agent who prepared the report had not been and was not thereafter called to testify.

The particular paragraph of the FBI report that defense counsel attempted to admit reads, in pertinent part:

Price was advised that the Assistant United States Attorney in Springfield, Missouri desired to have him advised that

prosecution against him was being declined and that the AUSA feels that Price could be a very important government witness. Price advised he would be willing to testify in court against Vik.

The Federal Rules of Evidence, Rule 801, define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The FBI report at issue here fell within this definition when it was offered at trial. It did not qualify as an exception to the hearsay rule. See Fed.R.Evid. 803. Therefore, it was properly excluded. Defense counsel utilized the report to the extent permissible under the Rules of Evidence in cross-examining Price. In order to attempt to impeach Price's assertions further, by use of the report, the agent who made the report could have been called to testify.

### III.

The prosecution was allowed to call three witnesses during its case-in-chief to testify regarding acts and statements of Vik observed by them in March 1979, shortly before the girls left Carthage with Vik on March 31, 1979. The Government had the burden of proving Vik's intent in transporting the girls to Chicago.[2] The evidence at issue here was offered in the Government's attempt to sustain that burden.

Witness Lambert testified that Vik asked her to go to Chicago to be a prostitute for him. She said that he also showed her pictures of his "working girls." Witness Day testified that Vik also showed to her pictures of girls who he said worked for

him. Day also testified that Vik said he was a "pimp" in Chicago. Witness Reed testified that he, too, was shown pictures of girls by Vik and that Vik had spoken of being a "pimp." Vik contends that the admission into evidence of these other "crimes, wrongs, or acts" was erroneous. We disagree.

The admissibility of other crimes evidence is governed by Federal Rules of Evidence, Rule 404(b).[3] In order for evidence to be admissible under the rule, there must be a showing that (1) a material issue on which other crimes evidence may be admissible has been raised, (2) the proffered evidence is relevant to that issue, (3) the evidence of other crimes is clear and convincing, and (4) the other crimes evidence relates to wrongdoing similar in kind and reasonably close in time to the charge at trial. E. g., United States v. Foote, 635 F.2d 671, 672–73 (8th Cir. 1980); United States v. Frederickson, 601 F.2d 1358, 1365 (8th Cir.), cert. denied, 444 U.S. 934, 100 S.Ct. 281, 62 L.Ed.2d 193 (1979).

In the present case, the question of Vik's intent in transporting the girls raised a material issue. Despite Vik's contentions to the contrary, the evidence received through Lambert, Day, and Reed was relevant on the issue of Vik's intent. The testimony of the witnesses, each corroborating the other, was clear and convincing. And the evidence at issue relates to wrongdoing similar to and close in time to the charge for which Vik was tried.

Under Federal Rules of Evidence, Rule 403,[4] the evidence could nevertheless have been excluded if the danger of undue preju-

---

**2.** The indictment charged, in pertinent part, that Vik "intended that said girls engage in prostitution and prohibited sexual conduct, the said ROBERT ARNOLD VIK knowing or having reason to believe that such prohibited sexual conduct would be commercially exploited by himself and other persons; all in violation of Title 18; United States Code, Section 2423."

**3.** Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be

admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**4.** Rule 403 provides in pertinent part:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

dice substantially outweighed its probative value. The probative value of the evidence on the issue of intent was, we believe, great. The court did not abuse its discretion in admitting the evidence.

### IV.

Vik argues that it was reversible error for the trial court to refuse to give the following jury instruction at his request:

A charge such as that made against the defendant in this case is one which, generally speaking, is easily made and once made is difficult to disprove, even if the defendant is innocent. From the nature of the case such as this, the complaining witness may be the only witness testifying directly as to the alleged act constituting the crime. Therefore, the law requires that you examine the testimony of the prosecuting witnesses with caution and consider and weigh it in light of all the circumstances shown. In giving this instruction, the Court does not mean to imply an opinion as to the credibility of any witness or the weight to be given his or her testimony. *United States v. Merrival*, 600 F.2d 717, 719 (8th Cir. 1979).

The *Merrival* case, cited as support for the giving of the instruction, was one wherein the defendant was charged with assault with intent to commit rape. On the appeal of Merrival's conviction, this court refused to reverse, even though the proferred instruction had *not* been given. The court held: "[T]his instruction is particularly argumentative and should not be given when there is corroboration of the complaining witness's testimony." *United States v. Merrival*, 600 F.2d 717, 719 (8th Cir. 1979).

■ The trial court did not commit error in refusing to give the instruction. The instruction would not have been appropriate in this case, where defendant was charged with transporting minors for the purpose of prostitution, and substantial corroboration of the complaining witnesses' testimony exists.

### V.

Finally, Vik contends that there was not enough credible evidence that he had the specific intent of transporting the minors for the purpose of prostitution to allow the case to go to the jury. He argues that his motions for judgment of acquittal should have been sustained.

 The evidence adduced at trial on the issue of Vik's intent included evidence of several statements about "pimping" young girls, made by Vik just prior to the transportation of the girls, and statements about the business of prostitution, made by Vik on the way to Chicago with the girls. This evidence, along with the testimony of both girls and James Price, was sufficient to prove to the jury beyond a reasonable doubt the requisite intent.

Affirmed.