**UNITED STATES of America, Appellee,**

v.

**John A. ELLSWORTH, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Mary A. ELLSWORTH, Appellant.**

**Nos. 83–2279, 83–2336.**

United States Court of Appeals, Eighth Circuit.

Submitted April 9, 1984.

Decided July 6, 1984.

Rehearings and Rehearings En Banc in No. 83–2279 Denied Aug. 14, 1984.

Clay B. Statmore, Vincent M. Powers, Lincoln, Neb., for appellants.

Before BRIGHT, Circuit Judge, SWYGERT, Senior Circuit Judge,[*] and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

John and Mary Ellsworth, husband and wife, were charged by information with willful failure to file federal income tax returns for the years 1977, 1978, and 1979 in violation of 26 U.S.C. § 7203. The jury returned a verdict of guilty for the years 1978 and 1979.[1] Both of the Ellsworths appeal their convictions. We affirm.

John alleges a number of errors, including prosecution by information rather than by indictment, failure to strike two jurors for cause, failure to allow a psychiatrist to testify, ineffective assistance of counsel, and prejudicial remarks by the prosecutor during closing argument. Mary alleges error only on the latter two grounds.

John contends that because he could have been sentenced to hard labor he should have been prosecuted by indictment, rather than by information. *See* Fed.R. Crim.P. 7(a). Rule 7(a) requires prosecution by indictment when the offense can be punished by death, by imprisonment for more than one year, or at hard labor. This rule is consistent with the Fifth Amendment's requirement of grand jury indictment for "capital or otherwise infamous" crimes and with decisions which define "infamous crime." *See United States v. Moss*, 604 F.2d 569, 572 (8th Cir.1979), *cert. denied*, 444 U.S. 1071, 100 S.Ct. 1014, 62 L.Ed.2d 752 (1980).

There is no merit to John's argument. The statute under which he was prosecuted provides that the crime is a misdemeanor and that upon conviction a person "shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, together

Ronald D. Lahners, U.S. Atty., D. Neb., Paul D. Boeshart, Asst. U.S. Atty., Lincoln, Neb., for appellee.

* The Honorable Luther M. Swygert, United States Senior Circuit Judge for the Seventh Circuit, sitting by designation.

1. The case was heard before the Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

with the costs of prosecution."[2] 26 U.S.C. § 7203. The statute does not authorize the punishment of hard labor. Therefore, John was properly charged by information.

John also contends that the District Court abused its discretion, *see United States v. Young*, 553 F.2d 1132, 1136 (8th Cir.), *cert. denied*, 431 U.S. 959, 97 S.Ct. 2686, 53 L.Ed.2d 278 (1977) (rulings on juror qualifications reviewed under abuse of discretion standard), by failing to strike two prospective jurors for cause. Juror McElroy, according to John, should have been struck because she would not affirmatively state that she could be impartial. Juror Berck demonstrated actual bias, according to John, by stating that he "would be more apt to go the other way," than to say "bully for someone who might choose intentionally to violate [the tax laws]." Trial Transcript (Tr.) at 434 (defense counsel questioning; juror Berck's response). There is no merit to John's arguments. Juror Berck later stated he could listen with an "open mind" and serve "impartially." Tr. at 440, 443. Neither prospective juror demonstrated a closed mind; rather, they demonstrated a conscientious attempt to be open and frank with counsel on both sides. The attitudes expressed were appropriately left for consideration by counsel in exercising peremptory strikes. We note that neither juror McElroy nor juror Berck was on the panel chosen to try the case and there is no showing that the empaneled jury was not impartial. *See United States v. Young*, 553 F.2d at 1136.

John also argues that a psychiatrist, Dr. Eli Chesen, should have been allowed to testify at trial. Following the close of the government's case, the defendants informed the District Court and counsel for the government that Dr. Chesen would be called to testify. The District Court granted the government's motion to exclude the testimony under Rule 12.2(d) on the ground that no notice had been given to the government pursuant to Rule 12.2(b) of the Federal Rules of Criminal Procedure. John concedes that he did not give notice; but he contends that Dr. Chesen's opinion was outside the scope of Rule 12.2(b) because it addressed John's good faith belief that the income tax is a voluntary process and not John's mental state. The government's position is that Dr. Chesen's testimony was related to whether John had the mental state required for the offense.

Rule 12.2(b) requires a defendant to give notice "[i]f [the] defendant intends to introduce expert testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether he had the mental state required for the offense charged ...."[3] Courts have disagreed over the scope of expert testimony covered by Rule 12.2(b). *See, e.g., United States v. Hill*, 655 F.2d 512, 517–18 (3rd Cir.1981) (general discussion of applicability of rule in entrapment cases); *United States v. Webb*, 625 F.2d 709, 710–11 (5th Cir.1980) (rule not applicable to testimony offered to show defendant lacked the propensity to commit a violent act where it was offered to show defendant did not commit the offense charged); *United States v. Busic*, 592 F.2d 13, 20 (2nd Cir.1978) (testimony that defendant committed offense out of "psychological necessity" was properly excluded on grounds other than the rule); *United States v. Olson*, 576 F.2d 1267, 1273 (8th Cir.) (rule applicable to testimony regarding defendant's alcoholism), *cert. denied*, 439 U.S. 896, 99 S.Ct. 256, 58 L.Ed.2d 242 (1978); *United States v. Staggs*, 553 F.2d 1073 (7th Cir.1977) (rule applied to testimony that defendant was more likely to hurt himself than others); *United States v. Edwards*, 90 F.R.D. 391, 393 (E.D.Va.1981) (rule applied to testimony regarding defendant's intellectual capacity).

Although Rule 12.2(b) has been applied in a wide variety of circumstances, we

---

**2.** This statute was amended in 1982 to raise the limit of the fine to $25,000; the amendment applies to offenses committed after September 3, 1982 and is not applicable here.

**3.** Rule 12.2(b) was amended in 1983. The effective date of the amendment occurred subsequent to the trial in this case.

do not believe it can be extended to cover the testimony of Dr. Chesen. We can find no support in the record for the government's assertion that his testimony related to a "condition." Cases which apply the rule can be distinguished on the ground that the expert testimony concerned a complaint, an affliction, or a psychological characteristic susceptible to clinical verification and diagnosis. In contrast, the testimony of Dr. Chesen, as offered by defendants, consisted only of the bare conclusion that John had a good faith belief that the income tax was voluntary. He repeatedly opined that John had a good faith belief, a conscientious belief, a genuine belief, and a true belief. But there was no evidence of an underlying psychological basis for this conclusion. Therefore, we conclude that Rule 12.2(b) did not apply in these circumstances.

 Although we disagree with the District Court's reason for excluding Dr. Chesen's testimony, we support the result, for we believe that Dr. Chesen's conclusory statement was not an appropriate subject for expert testimony.[4] The critical question is whether such testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R. Evid. 702. Nothing in the record suggests that Dr. Chesen's testimony would have assisted the jury in this case.

Dr. Chesen's opinion does not appear to be based upon a "sound factual foundation," nor does his opinion appear to be based upon "an explicable and reliable system of analysis." *See State v. Kim*, 64 Hawaii 598, 645 P.2d 1330, 1336 (1982); *see*

*also United States v. Fosher*, 590 F.2d 381, 382–83 (1st Cir.1979). Dr. Chesen briefly met with John and Mary on three occasions, but the offer of proof reveals none of the factual underpinnings of Dr. Chesen's conclusions. The method used by Dr. Chesen also is left unexplained. *Cf. United States v. Vik*, 655 F.2d 878, 880 (8th Cir.1981) (no abuse of discretion in refusal to allow psychiatrist to testify about personality types of victims in Mann Act case). Finally, we have no basis upon which to conclude that the subject was beyond the common understanding of the jurors or that Dr. Chesen could offer information that would ordinarily not be available to them. *See United States v. West*, 670 F.2d 675, 682 (7th Cir.), *cert. denied*, 457 U.S. 1124, 1139, 102 S.Ct. 2944, 73 L.Ed.2d 1340 (1982) (no error in rejecting psychiatrist's testimony that because of his limited intelligence defendant was less likely than a person of average intelligence to realize he had been given a bribe; jury able to assess his intelligence when he testified and did not need expert testimony); *United States v. Webb*, 625 F.2d 709, 711 (5th Cir.1980) (testimony that defendant lacked propensity to commit a violent act was excludable on ground that it was not necessary to assist trier of fact); *State v. Kim*, 645 P.2d at 1337. The District Court properly excluded the testimony of Dr. Chesen.[5]

 After the District Court ruled that Dr. Chesen's testimony was inadmissible because of failure to give notice pursuant to Rules 12.2(b) and (d), the defendants sought to introduce it as lay testimony. We find no abuse of discretion by the Dis-

---

**4.** We do not hold that Dr. Chesen's testimony was properly excluded because it addresses an "ultimate issue of fact" in the case; such testimony is permitted by Rule 704 of the Federal Rules of Evidence. Rather, we hold that it was properly excluded because of the lack of a foundation for Dr. Chesen's opinion.

**5.** Both John and Mary argue that they received ineffective assistance of counsel because their respective attorneys failed to give notice pursuant to Rule 12.2(b) of the intent to introduce two experts to testify. Dr. Chesen would have testified as to John's and Mary's good faith beliefs; Dr. Marty Klein would have testified as

to Mary's good faith belief. Our careful examination of the record reveals that the representation provided by counsel for each defendant easily met the standard of a reasonably competent attorney. Moreover, our discussion of the admissibility of Dr. Chesen's testimony clearly shows that the defendants were not prejudiced by the alleged error of failing to give notice. *See generally Strickland v. Washington*, — U.S. —, 104 S.Ct. 2052, 2064–69, 80 L.Ed.2d 674 (1984) (test for an ineffective assistance claim consists of two components: a performance component and a prejudice component).

trict Court in refusing to permit Dr. Chesen to testify as a lay witness. Defense counsel had informed the jury that Dr. Chesen would testify as an expert. Had he been allowed to testify, his aura of expertise almost certainly would have remained with him in the eyes of the jury. Moreover, the defendants called a number of lay witnesses who testified to John's good faith belief that wages were not taxable income; Dr. Chesen's testimony as a lay witness would have been cumulative.

John and Mary also contend that reversal is required because the attorney for the government made improper remarks in his closing argument. The government attorney used an analogy to explain the difference between a good faith misunderstanding of the law and a good faith disagreement with the law.[6] Defendants argue that by using this analogy the government attorney insinuated that they were thieves.

No objection was made by either defendant at the time of the argument; therefore, we review the remarks for plain error. *See United States v. Boykin*, 679 F.2d 1240, 1245 (8th Cir.1982). In our view, the remarks were not so prejudicial that they "affected substantial rights resulting in a miscarriage of justice." *Id.* (quoting *United States v. Splain*, 545 F.2d 1131, 1136 (8th Cir.1976)). Although the prosecutor's use of stealing as the basis of the analogy may have transgressed the limits of propriety, we do not believe the remarks were sufficiently prejudicial to require reversal. The purpose of the analogy was to explain the meaning of willful failure to file income tax returns, not to label the Ellsworths as thieves. In addition, the District Court properly instructed the jury as to what the government had to prove in regard to the element of willfulness. There is no basis upon which to conclude that use of stealing in the analogy inflamed or misled the jury or otherwise resulted in any actual prejudice.

Finding no merit to the appellants' claims, we affirm their convictions.

6. In closing argument, the attorney for the government stated:

Let me give you an example of a person who can misunderstand the law and a person who would disagree with the law. There is a little person called Billy, and he's raised by his mother. He happens to have a very bad mother, and Billy's mother, from the time he's a little boy says, "Billy, steal. It's a good thing for you to steal." She teaches him now to be real deceptive. I told you she was a terrible mother. And, at a very young age he's in the store and goes by the candy counter and she says, "Billy, take a candy bar," and he says, "Okay." So he takes a candy bar and he gets this terrible—he believes it's okay to steal. And eventually—I'll spare you the whole details, but eventually he becomes an adult and he walks into his favorite jewelry store, and there is a diamond ring, and he thinks, "Oh, a diamond; I've always wanted one." And he picks it up and he goes on trial. You know, did he misunderstand the law? Contrast that with the second example. Billy in the second case is raised by a very good mother, and she always tells him, from the time he's very little, "You shouldn't steal; it's wrong to steal; don't steal." He goes to school. He learns it's wrong to steal. There is no inconsistency about it, and he knows that it's wrong to steal, but he gets to thinking one day, "I feel like a free spirit; I really think I should be able to steal." And, at about the same time, he listens to somebody saying, "Well, it's still against the law to steal, but if you take things, that's okay." And Billy thinks, "Ah, that's perfect." And so Billy says, "Well, I know it's wrong to steal, but I can take things." So to the jewelry store he goes and he takes the diamond ring. Now, is Billy going to be acquitted because he didn't know it was wrong to steal? Ladies and gentlemen, that's [a] simple example, but similar to what we have with John and Mary Ellsworth. Are John and Mary Ellsworth two individuals who didn't understand that it was wrong to not file federal income tax returns on their wages? Or are they two individuals who decided that they wanted to disagree with the tax laws as they are constituted, and perhaps to disagree very sincerely, but who said, "I'm not going to do it anymore, and I'm going to say wages aren't income. I'm going to say that that just solves it."?

Tr. at 398–99.