**UNITED STATES of America, Appellee,**

v.

**Loren M. BARTA, Appellant.**

No. 88–5521.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1989.

Decided Oct. 30, 1989.

Richard P. Clem, Minneapolis, Minn., for appellant.

Franklin L. Noel, Minneapolis, Minn., for appellee.

Before JOHN R. GIBSON, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Loren M. Barta appeals his conviction for two counts of tax evasion under 26 U.S.C. § 7201 (1982) and two counts of filing false tax returns under 26 U.S.C. § 7206(1) (1982), alleging numerous errors in the conduct of the trial. We reject Barta's contentions and affirm.

## I. BACKGROUND

In a six-count indictment, the Government charged Loren M. Barta, the appellant, with tax evasion and filing false returns in 1982, 1983 and 1984. The Government's evidence established that Barta, a lawyer in New Prague and North Mankato, Minnesota, substantially understated his income during those three years. Specifically, Barta's 1982 income tax return disclosed taxable income of $2,992.40 when his actual earnings exceeded $27,000. In 1983, Barta disclosed income of $15,038.66 when the true amount was more than $69,000. In 1984, Barta declared no taxable income when he actually earned more than $44,000.

In presenting his defense, Barta did not dispute the Government's figures showing understated income, nor did he dispute Government allegations that he owed additional taxes on his income for the years in question. Barta denied, however, that he had any intent to defraud the Government or that he willfully filed false returns. Rather, Barta claimed that a personality disorder called detail phobia, combined with alcoholism, stress and health problems, caused an admittedly negligent oversight on his part. In support of this contention, Barta introduced both lay testimony and documentary evidence demonstrating his aversion to numbers. In addition, Barta elicited character testimony from a number of witnesses, including some witnesses called by the Government, about his community reputation for truth and veracity.

The Government disputed Barta's negligent-oversight defense and presented, as evidence of willfulness, Barta's attempt to obtain assurances that the tax examiner would keep his audit a civil matter, as well as Barta's practice of recording checks he deposited in his firm account but not recording checks for which he obtained cash. Further, to refute Barta's detail phobia defense, the Government presented evidence of Barta's demonstrated attention to detail while litigating complex lawsuits and in applications for personal loans.

A jury found Barta guilty of the counts for tax evasion and filing false returns in 1983 and 1984, but acquitted Barta of the charges from 1982. The district judge[1] sentenced Barta to two five-year terms on the tax evasion counts and two three-year terms on the false return counts, all to be served concurrently, but suspended all but six months of the concurrent prison terms

1. The Honorable Edward J. Devitt, United States District Judge for the District of Minnesota.

and ordered Barta placed on probation for three years thereafter.

Barta appeals, asserting the trial court erred in excluding expert testimony relevant to intent, permitting improper impeachment of character witnesses, refusing to give requested jury instructions and unfairly advantaging the prosecution by the conduct of the trial. We reject these contentions for the reasons discussed below.

## II. DISCUSSION

### A. Expert Witness

At trial, Barta sought to bolster his negligence defense by calling Dr. John Cronin, Ph.D., to testify about Barta's alleged detail phobia. The court, however, excluded this expert testimony upon the Government's motion. Barta challenges this ruling, alleging it infringed on his right to present a defense.

Prior to trial, Barta gave notice of his intention to introduce expert testimony of a mental condition bearing on guilt. *See* Fed.R.Crim.P. 12.2(b). The notice prompted a Government motion in limine questioning admissibility of the testimony under Fed.R.Evid. 702, 704. The trial judge did not make any preliminary ruling, but rather instructed Barta's attorney at trial as follows:

> With reference to the expert, if you will give me a memo with reference to who the expert is, what his degrees are and all of that, his background, and if you'd give me proposed colloquy [sic], question and answer—what questions you intend to ask him and what his known answers are, then I can pass on it.

Defense counsel complied only in part with the judge's direction. Although counsel submitted a curriculum vitae for Dr. Cronin, a Minnesota psychologist with professional credentials encompassing child psychology and education, chemical dependency, physical disability and stress-related dysfunction, counsel failed to supply the requested colloquy of questions and predicted answers. Instead, counsel submitted the one-and-one-half page outline reproduced below.[2]

With few exceptions, this outline failed to provide direct statements about Dr. Cro-

---

**2.**    OUTLINE OF CRONIN TESTIMONY

1. BACKGROUND / EDUCATION / PUBLICATIONS
   SUBMITTED BY WAY OF CURRICULUM VITAE
2. EXAMINATION AND TESTING OF BARTA
   THE DEFENDANT SUBMITTED TO THE FOLLOWING TESTING PROCEDURES: THE WECHSLER MEMORY SCALE—REVISED, WECHSLER ADULT INTELLIGENT SCALE—REVISED, MMPI PROFILE AND WORD AND NUMBER ASSESSMENT INVENTORY. IN ADDITION, I EXAMINED THE ST. MARY'S HOSPITAL RECORDS AND INTERVIEWS WITH HIM AT THE PRIMARY BEHAVIORAL HEALTH CLINIC.
3. CONCLUSION TO A DEGREE OF REASONABLE PSYCHOLOGICAL CERTAINTY, WHETHER BARTA SUFFERS FROM ANY MENTAL OR EMOTIONAL DEFECT, DEFICIENCY OR CONDITION?
   SUFFERS FROM "DETAIL PHOBIA" CLINICALLY—DIAGNOSIS OF OBSESSIVE/COMPULSIVE, NARSCISSTIC [sic] PERSONALITY
   MANIFESTS SELF IN INABILITY TO DEAL WITH NUMBERS OR DETAIL.
   ALSO SUFFERS FROM ALCOHOLISM, WHICH HAS INTENSIFIED, TRIGGERED DIFFICULTY WITH DETAIL PHOBIA TO EXTENT BARTA HAS BECOME DYSFUNCTIONAL. (KNOWN PSYCHIATRIC CONDITIONS AS DESCRIBED IN DIAGNOSTIC STATISTICAL MANUAL OF MENTAL DISORDERS, III, 1985 AS REVISED)
4. EXPLAIN "DETAIL PHOBIA"—CHARACTERISTICS OF PHOBIA
   EXPLAIN DIFFERENCE BETWEEN THOSE WHO DON'T LIKE DETAIL AND THOSE WHOSE PROBLEM CONSTITUTES A PERSONALITY DISORDER (ILLUSTRATE—MOTIVATION ANALYSIS)
5. EXPLAIN CHRONIC PERSISTENT ALCOHOL ABUSE AND ITS EMOTIONAL AND PHYSICAL IMPACT.
   EXPLAIN RELATIONSHIP TO PHOBIA—IMPAIRMENT OF JUDGMENT.
6. EXPLAIN RELATIONSHIP OF STRESS.
7. CONCLUSION AS TO WHETHER BARTA SUFFERED FROM DETAIL PHOBIA IN 1982–84.
   CONCLUSION AS TO WHETHER ALCOHOLIC DURING THAT TIME.
8. BASIS FOR OPINIONS
   A. TESTING RESULTS
   B. INTERVIEWS
      BARTA FATHER
      INTERPERSONAL RELATIONS AT TIME
      WORK RELATIONSHIPS
      STRESS
9. TREATABLE DISEASE?
   A. CURRENTLY IN TREATMENT

nin's opinions or the substance of his expected testimony. Rather, the outline merely paraphrased the subjects to be covered, with little accompanying explanation. From what can be garnered from these cursory notations, Dr. Cronin apparently would have concluded, based on interviews, medical records and psychological test results, that Barta had become dysfunctional during 1982–84 due to detail phobia and alcoholism. The outline failed to articulate, however, any cognizable relationship between Barta's mental condition and his alleged lack of intent to commit the instant crimes. Moreover, when the court excluded Dr. Cronin's testimony at trial, Barta's counsel made no further offer of proof, even though Dr. Cronin was present in the courtroom at that time. *See* Fed.R.Evid. 103(b) (permitting the court to direct an offer of proof in question-and-answer form).

The district court, in a formal order filed post-trial, listed several grounds for excluding the Cronin testimony, including: (a) the jury's ability to understand Barta's alleged fear of detail without expert assistance; (b) the likelihood that such testimony would confuse the issues; (c) Dr. Cronin's questionable qualifications to testify about detail phobia; and (d) an insufficient showing that the mental health community generally accepted detail phobia as a psychiatric disorder.

■ In reviewing whether testimony of an expert should be received, we first observe that the Federal Rules of Evidence approve a broad role for experts in the trial of a case, civil or criminal. Specifically, Fed.R.Evid. 702 directs:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Additionally, the advisory committee notes to Rule 702 recite in part:

Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier. . . .

The rule is broadly phrased. The fields of knowledge which may be drawn upon are not limited merely to the "scientific" and "technical" but extend to all "specialized" knowledge.

Consequently, we believe the concept expressed by the Rules is sufficiently broad to embrace psychiatric and psychological testimony from those who possess specialized knowledge concerning mental aberrations in human behavior, when such knowledge will help the jury to understand relevant issues in the case.

■ We do not decide here, however, whether this court would have permitted Dr. Cronin's testimony on detail phobia had we sat as the trial court in this case. *See United States v. Felak*, 831 F.2d 794, 797 (8th Cir.1987). Absent improper infringement on the accused's right to present a defense, *see United States v. Shorter*, 809 F.2d 54, 59, 61–62 (D.C.Cir.), *cert. denied*, 484 U.S. 817, 108 S.Ct. 71, 98 L.Ed.2d 35 (1987); *United States v. Davis*, 772 F.2d 1339, 1347–48 (7th Cir.), *cert. denied*, 474 U.S. 1036, 106 S.Ct. 603, 88 L.Ed.2d 581 (1985), trial judges have considerable discretion to admit or exclude expert testimony in a given case. *United States v. Vik*, 655 F.2d 878, 880 (8th Cir.1981). For a number of reasons, under the circumstances of this case, we conclude that the trial judge acted within his discretion in excluding Dr. Cronin's testimony.

At the outset, we note that this circuit has upheld trial court decisions excluding expert testimony similar in substance to that to which Dr. Cronin might likely have given. For example, in *United States v. Felak*, 831 F.2d at 797–98, a tax evasion case, we upheld a trial court ruling excluding psychiatric testimony of a defendant's obsessive, mistaken belief in voluntary income tax payments, even though such testimony suggested an absence of willful intent. As well, in *United States v. Ellsworth*, 738 F.2d 333, 336 (8th Cir.), *cert. denied*, 469 U.S. 1042, 105 S.Ct. 528, 83 L.Ed.2d 415 (1984), we approved the exclusion of a psychiatrist's unsupported asser-

tions about a taxpayer's good faith belief in the voluntariness of income taxes as evidence unnecessary to assist the jury under Rule 702.

Additionally, other circuits have sometimes excluded expert testimony under comparable circumstances. *See United States v. Kepreos*, 759 F.2d 961, 964 (1st Cir.) (expert psychiatric testimony about defendant's diminished ability to attend to subtle details in his surroundings excluded from fraud prosecution even though relevant to intent), *cert. denied*, 474 U.S. 901, 106 S.Ct. 227, 88 L.Ed.2d 227 (1985); *United States v. West*, 670 F.2d 675, 682 (7th Cir.) (expert testimony about bribery defendant's limited intelligence excluded even though offered to show defendant's good faith belief that he had accepted a legitimate gift), *cert. denied*, 457 U.S. 1124, 1139, 102 S.Ct. 2944, 73 L.Ed.2d 1340 (1982).

From our reading of Rule 702, the advisory committee notes and the above cases, the exclusion of the proffered expert testimony in this case presents an interesting question. This is especially true when we consider that the detail phobia testimony proffered here may well have presented a novel psychiatric or psychological theory to negate Barta's intent. *See United States v. Shorter*, 809 F.2d at 60–61; *cf. United States v. Lewellyn*, 723 F.2d 615, 619–20 (8th Cir.1983) (defendant claiming insanity due to pathological gambling must demonstrate that the mental health community generally accepts the principles underpinning his theory).

Additionally, we are constrained, as was the trial court, by Barta's failure to demonstrate, by an appropriate offer of proof, the relevance of Dr. Cronin's testimony to this case—particularly, the relationship, if any, existing between Barta's alleged detail phobia and his misstatements of taxable income. As Fed.R.Evid. 103(a)(2) provides, error may not be predicated upon a ruling which excludes evidence unless "the substance of the evidence was made known to the court by offer [of proof] or was apparent. ..."

Barta has failed to make the necessary showing that the trial judge abused his discretion by excluding Dr. Cronin's testimony.

**B. Examination on Character**

Barta asserts the trial court erred in permitting the Government to impeach character witnesses with questions premised on an assumption of guilt. Specifically, the Government called Harry Caldis, an insurance company employee, to testify to fees the company paid Barta for legal services rendered. On cross-examination by defense counsel, however, Caldis also testified to Barta's community reputation for "high character" and trustworthiness. Consequently, on redirect, the prosecutor elicited the following testimony over objection:

Q. I guess what I'm getting at, Mr. Caldis, is you testified as to Mr. Barta's reputation in the community.

What I'm trying to find out is if your opinion of that reputation would change if, if the facts showed that he had, in fact, lied on his income tax return.

A. I would expect that if I had heard that Mr. Barta had deliberately falsified his own income tax return, that certainly would probably affect my opinion of Mr. Barta.

The objection to these questions clearly should have been sustained as unfairly undermining the presumption of innocence. *See United States v. Candelaria–Gonzalez*, 547 F.2d 291, 294 (5th Cir.1977). In *Candelaria–Gonzalez*, the Fifth Circuit struck down as improperly prejudicial similar questions designed to impeach character witness testimony of the accused's good reputation, noting:

The nature of the questions put to [defendant's] witnesses by government counsel, however, was a far cry from any concept of formulated community opinion. Rather, the questions posed sought speculative responses resting upon an assumption of guilt. Government counsel asked if [defendant's] reputation *would* be affected *if* he *were* convicted of the alleged crime. These hypothetical ques-

tions struck at the very heart of the presumption of innocence which is fundamental to Anglo–Saxon concepts of fair trial. We think that the risk of prejudice to defendant's basic rights from such questions requires reversal. The questions put have no place in a criminal trial. *Id.* at 294 (citations omitted) (emphasis in original). *See also Little v. United States,* 93 F.2d 401, 408 (8th Cir.), *cert. denied,* 303 U.S. 644, 58 S.Ct. 643, 82 L.Ed. 1105 (1937).

■ Although we hold that the questions asked and answered during the prosecutor's redirect examination constituted error, this case does not require reversal. *See* Fed.R.Crim.P. 52(a) (defining harmless error); 28 U.S.C. § 2111 (1982) (same). On recross, Barta's counsel ably rehabilitated the witness by eliciting statements that the witness' opinion would not change if the misstatements on Barta's tax returns had resulted from mistake or neglect. Further, the witness testified that he would believe Barta's professions of non-willfulness. Thus, the error contributed nothing to the verdict and, consequently, was harmless. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *United States v. McCrady,* 774 F.2d 868, 873–74 (8th Cir.1985); *see also United States v. Polsinelli,* 649 F.2d 793, 797–98 (10th Cir.1981) (reversal required because character witness' answers to impeaching questions greatly detracted from their credibility).

■ Barta also contends that the Government improperly cross-examined defense character witnesses testifying to his community reputation for truth and veracity. While cross-examining defense witnesses, the prosecutor did not inquire whether facts showing that Barta had "lied on his income tax return" would affect their conclusions, but did ask whether these witnesses possessed familiarity with the facts underlying the present charges. Such questions also exceed the bounds of propriety, premised, as they are, on a pre-

sumption of guilt. These questions permitted the Government to improperly bolster the weight of its own evidence by implying that the witnesses might have answered differently had they heard the same evidence as the jury. *Cf. United States v. Candelaria–Gonzalez,* 547 F.2d at 294–95 (prosecutor's questions to impeach character witness improperly raised inculpatory testimony by a drug enforcement agent to the status of accepted fact). In the present case, however, Barta failed to object, and we decline to find plain error on this record. *See United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985).

C. Instructions

Barta asserts error in the trial court's refusal to adequately instruct the jury on his negligence/good faith theory of defense. Specifically, Barta requested jury instructions that

> Mere negligence, even gross negligence, is not sufficient to constitute willfulness under the criminal law.

and:

> If a person, in good faith, believes that he has paid all the taxes he owes, he cannot be guilty of criminal intent to evade the tax. But if a person acts without reasonable ground for belief that his conduct is lawful, it is for the jury to decide whether he acted in good faith, or whether he willfully intended to evade the tax. This issue of intent, as to whether the Defendant willfully attempted to evade or defeat the tax, is one which the jury must determine from a consideration of all the evidence in the case bearing on the Defendant's state of mind.

■ Having reviewed the instructions in full, we conclude that the court fully and fairly instructed the jury on the law.[3] The court gave full instructions on the elements

---

**3.** After reading the instructions to the jury, the court gave counsel an opportunity to object to the charge as given. Barta's counsel responded, as did the Government, "Nothing further...." Consequently, while we address this issue on the merits, we doubt that any error on instructions has been preserved for appeal. *See* Fed.R. Crim.P. 30 (objection to instructions is prerequisite to appeal).

of the crimes charged and further advised the jury as follows:

> And, of course, the defendant's lawyer argued to you, and his position is that he denies the government's claim that he committed these criminal acts. He admits that he owes taxes on unreported income for each of these years, '82, '83 and '84, but he denies that he willfully lied when signing his returns and denies that he acted with an intent to defraud the United States. Defendant asserts that the existence of a psychological condition concerning his inability to deal with numbers and with detail, especially when viewed in connection with alcoholism and stress problems, which he claims to have suffered during the years in question supports the conclusion that he did not act with a criminal intent.

The instructions given adequately informed the jury of Barta's theory of defense. *Compare United States v. Bartlett*, 856 F.2d 1071, 1082 (8th Cir.1988) (sufficient theory of defense instruction given); *United States v. Ammons*, 464 F.2d 414, 417 (8th Cir.) (same), *cert. denied*, 409 U.S. 988, 93 S.Ct. 343, 34 L.Ed.2d 253 (1972) *with United States v. Casperson*, 773 F.2d 216, 222–24 & n. 9 (8th Cir.1985) (theory of defense instruction not sufficient). As we have noted on numerous previous occasions, a litigant is not entitled to specific wording. *United States v. Bartlett*, 856 F.2d at 1083; *United States v. Casperson*, 773 F.2d at 223; *United States v. Reda*, 765 F.2d 715, 719 (8th Cir.1985).

### D. Fair Trial

Barta contends that the trial court accorded the prosecutor special privileges on numerous occasions during proceedings in his case, thus depriving him of a fair result. For example, on the day the trial began, Barta and his counsel arrived in the courtroom first and selected, from two available counsel tables, the one positioned nearer the jury box. When the trial judge entered the courtroom, however, he directed the defense to move, stating that the table belonged to the prosecutor by tradition. Barta further asserts that the court accorded the prosecutor certain other advantages, specifically, allowing the prosecutor to: (a) explain a stipulation to the jury; (b) withdraw a motion ex parte; (c) get in "the last word" by scheduling a weekend recess following the prosecutor's rebuttal argument but before jury instructions; and (d) call a defense post-trial motion. Barta contends these privileges gave the prosecutor control of the courtroom and created an appearance that the prosecutor possessed a privileged status with the court.

■ Appellant's contention needs but brief comment. With one exception, the timing of closing arguments, Barta failed to raise proper objection to any of these matters before the district court. Even assuming the objections had been properly preserved, however, these incidents do not establish unfairness in the trial. *Compare United States v. Nelson*, 570 F.2d 258, 261–62 (8th Cir.1978) (no prejudice to defendant from trial court's courtroom conduct); *Skogen v. Dow Chem. Co.*, 375 F.2d 692, 704–06 (8th Cir.1967) (trial judge acted within his discretion to control courtroom) *with United States v. Candelaria–Gonzalez*, 547 F.2d at 295–97 (court's disparaging remarks exceeded bounds of discretion). This court declines, especially in the absence of proper objection, to advise trial judges about how to control their courtrooms. *See United States v. Nelson*, 570 F.2d at 262; *see also United States v. Young*, 470 U.S. at 10, 16, 105 S.Ct. at 1043, 1046, 84 L.Ed.2d 1; *Geders v. United States*, 425 U.S. 80, 86–87, 96 S.Ct. 1330, 1334–35, 47 L.Ed.2d 592 (1976). The trial judge in this case has a proven record of consideration and fairness toward litigants. Further, the so-called *ex parte* conversation complained of here occurred in open court on the record and that record shows, contrary to defense assertions, that the prosecutor merely advised the judge of his intent to withdraw the motion on the record at a later time.[4]

---

4. Having rejected appellant's fair trial assertions, the author of this opinion, speaking only for himself, comments further about one matter. Whether there is truth to the belief or not,

## III. CONCLUSION

Having carefully reviewed the record, we ascertain no unfairness or prejudicial error in the trial.

Affirmed.

JOHN R. GIBSON, Circuit Judge, concurring separately.

I concur in the opinion of the court prepared by Judge Bright fully, with the exception of footnote 4. As there was no trial objection, I do not feel that this footnote is necessary to our decision and do not agree with it.

popular legal folklore often expounds that advantages can be reaped from a litigator's positioning in the courtroom—including occupying the counsel table nearer the jury than one's opponent. Barta's counsel asserts this view and claims an entitlement to the "favored" table based on, essentially, a "first in time, first in right" analysis. While in this author's day as a trial lawyer, and probably in many courts today, seating has been determined by who arrives first at the preferred counsel table, such an unmonitored method of selection may on occasion be somewhat unseemly in a court of law. Where, however, counsel makes an objection to the seating arrangements, a trial judge may deem it appropriate to make the choice by some more neutral way than tradition or a race to the "best" seat.