562 F.2d 592
 Everett B. YOST, Administrator of the Estate of Sally Ann
Yost, Deceased, Appellant,
v.
A. O. SMITH CORPORATION, a corporation, Emerson Electric
Company, a corporation, Appellees,
Appeal of ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a
corporation (two cases).
Warren A. LEAGUE, Appellant,
v.
A. O. SMITH CORPORATION, a corporation, Emerson Electric
Company, a corporation, Appellees.
 Nos. 76-1985 and 76-1986.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 1, 1977.
Decided Oct. 3, 1977.
 
 Kent F. Jacobs, Seward, Neb., argued and filed appearance for appellants Yost and League and made conclusion of argument.
 Donald E. Girard, Maupin, Dent, Kay, Satterfield, Girard & Scritsmier, North Platte, Neb., on brief and filed appearance for St. Paul Fire & Marine Ins. Co.
 Bryce Bartu, Blevens, Bartu, Blevens & Jacobs, Seward, Neb., argued and on brief, for Yost and League.
 J. Arthur Curtiss and Roger M. Beverage of Baylor, Evnen, Baylor, Curtiss & Grimit, Lincoln, Neb., argued and on brief, for A. O. Smith Corp.
 Fredric H. Kauffman, Cline, Williams, Wright, Johnson & Oldfather, Lincoln, Neb., argued and on brief, for Emerson Elec. Co.
 Before BRIGHT, ROSS, and HENLEY, Circuit Judges.
 BRIGHT, Circuit Judge.
 
 
 1
 Sally Ann Yost, a 24-year-old schoolteacher in the Stratton, Nebraska, public schools was killed, and Warren A. League, school custodian, sustained severe bodily injuries, in an August 31, 1973, propane gas explosion on the school premises. The explosion occurred at the site of a propane-burning water heater located in the school basement. The A. O. Smith Corporation manufactured the water heater in 1965, and Emerson Electric supplied the attached heater controls. The unit had been installed in 1968 in the Stratton school. Contending that these manufacturers had supplied the school with a defective product, the administrator of Ms. Yost's estate (Everett B. Yost), Mr. League, and the subrogated workmen's compensation carrier for both of them (St. Paul Fire and Marine Insurance Co.) sought damages for Ms. Yost's death and Mr. League's injuries on a theory of strict liability. The district court consolidated these diversity actions for trial. After receiving an adverse judgment denying any recovery in district court,[1] plaintiffs brought this appeal. We affirm.
 
 
 2
 The testimony indicates that for a few days prior to the explosion, Ms. Yost and a few students had detected the smell of propane gas in the school basement, but on inspection neither Ms. Yost nor the students could locate any gas leak. On the day of the accident, Mr. League, at Ms. Yost's request, entered the basement intending to light the water heater. At the bottom of the stairs, in the semi-dark basement, League lit a match. The match flared, and League dropped it to the floor. A series of explosions then occurred, causing fatal injuries to Ms. Yost, and serious injuries to Mr. League.
 
 
 3
 Following the explosion, a deputy fire marshal's investigation disclosed the absence of both the inside and outside burner doors of the water heater, and the absence of lighting instructions that in at least some instances are printed upon the burner doors of the A. O. Smith water heaters. The deputy fire marshal also discovered that the water heater control valve permitted gas to pass freely into the water heater when unlighted. The water heater control valve had been designed with a safety device to stop the flow of gas when the pilot light did not burn. Normally this device could only be overridden by depressing the knob on the valve after it had been turned to the "pilot" position. When the knob was so depressed gas could flow into the pilot light to permit lighting of the pilot. Thereafter the knob was to be turned to the "on" position permitting the flow of gas to the water heater only while the pilot light burned.[2] Thus, when turned to an "on" position, the spring-loaded control knob would rise to its original, undepressed position. The evidence disclosed, however, that by the use of some excessive outside force the plastic control knob on the water heater in the Stratton school had been forced and jammed downward in the "on" position, thereby nullifying the automatic gas shutoff feature of the control.
 
 
 4
 The testimony appears to have established that propane gas running through the altered control valve of the unlighted water heater permitted gas to leak into the basement of the school building, causing the explosion, and that such alteration had occurred sometime after the installation of the unit in the school. Appellants' expert witness offered his opinion that an additional ledge in the control mechanism could diminish the possibility and make it more difficult for anyone, in the absence of proper instruction, to force down and depress the valve knob in the "on" position, thus permitting gas to flow into the heater, bypassing the safety device.
 
 
 5
 Appellants predicated their claims on a strict liability theory founded upon § 402(A) of the Restatement (Second) of Torts, adopted by the Nebraska Supreme Court in Kohler v. Ford Motor Co., 187 Neb. 428, 191 N.W.2d 601 (1971), asserting two grounds of liability:
 
 
 6
 1) Defective design of the controls.
 
 
 7
 2) Absence of lighting instructions on the unit and failure of the manufacturer to provide an instruction manual with the product.
 
 
 8
 The district court at the close of appellants' case concluded as a matter of law that appellants had failed to introduce satisfactory evidence that lighting instructions had not been attached to the unit or that an instruction manual had not accompanied the water heater upon shipment by the manufacturer. Accordingly, the court dismissed these aspects of the claim but submitted the design defect theory to the jury under a special verdict reading as follows:
 
 
 9
 QUESTION 1: Does the preponderance of the evidence show that the control unit of the water heater was defectively designed at the time it was placed in the market by the defendants?
 
 Yes No
 
 10
 The jury answered in the negative. Thereafter, the district court entered its judgment dismissing the action. The trial court also denied appellants' motion for a new trial.
 
 
 11
 Appellants urge five grounds for reversal. First, they contend that the trial court erred in sustaining, on grounds of relevancy and as beyond the scope of cross-examination, objections to certain questions on redirect examination. These questions sought to elicit from Wayne Madsen, the supplier of the A. O. Smith water heater to the Stratton public school, information concerning any instructions on doors of two other A. O. Smith water heater units obtained from a distributor at about the same time as Madsen obtained the heater unit installed in the school.
 
 
 12
 We do not reach the merits of this issue for appellants have failed to preserve their objection by making an offer of proof of Madsen's testimonial responses to these questions. Indeed, appellants expressly withdrew an offer to prove up Madsen's testimony.
 
 
 13
 Federal Rule of Evidence 103(a) specifically provides that "(e)rror may not be predicated upon a ruling which * * * excludes evidence unless a substantial right of the party is affected, and * * * the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked." Here, without an offer of proof, we have no way of knowing whether the excluded evidence would be helpful or harmful to appellants. Thus, the claim of prejudicial error must be rejected.
 
 
 14
 Secondly, appellants state that the trial court erred in sustaining an objection to a question put to appellants' expert witness about whether that expert possessed knowledge "that the design or the plate was changed by the manufacturer prior to January of 1968." The record discloses that the court after ruling upon the objection advised appellants' counsel at a conference outside the presence of the jury of his familiarity with Federal Rule of Evidence 407[3] and further commented:
 
 
 15
 I grant that feasibility may be, and probably is a burden of the plaintiff to carry, and I want in no way to restrict them from legitimately pursuing a proof that whatever changes that they think should have been made were feasible to have been made. The difficulty is that the plaintiff here is seeking not merely to have this expert say, "these changes should have been made and they could have been made, and I know that to be true because I have seen such changes in other controls;" but to say "this defendant has made similar changes" which casts it in the light of either wanting the jury to take into account some negligence or fault or culpable concepts I can see no other reason for wanting to zero in on the defendants it is either for that purpose, it seems to me, or it is a kind of overkill situation in which it is asking for more than is legitimately necessary.
 
 
 16
 I don't mean to eliminate all possibilities of use of this kind of evidence but I find no basis to this moment for permitting it, and conclude that to permit it under the present status of things would be unfair and would run the risk of causing the jury to have its mind set in a direction that is neither necessary, under the theory of the plaintiff in this case, nor desirable from a public policy or a justice standpoint. (Record at 341-42.)
 
 
 17
 The transcript of the trial indicates that this expert had already testified to a design change relating to the addition of a ledge to diminish the possibility of anyone depressing the knob in the "on" position. Moreover, here too, appellants failed to press their point by making an offer of proof relating to the questioned testimony.
 
 
 18
 We said in Hoppe v. Midwest Conveyor Co., 485 F.2d 1196, 1202 (8th Cir. 1973):
 
 
 19
 The comparative design with similar and competitive machinery in the field, alternate designs and post accident modification of the machine, the frequency or infrequency of use of the same product with or without mishap, and the relative cost and feasibility in adopting other design are all relevant to proof of defective design. (Footnotes omitted).
 
 
 20
 Even assuming that the excluded evidence would have demonstrated adoption of an alternative design, without more information by way of an offer of proof, we cannot say that such answer bears on appellants' knowledge that the index plate on the control was defectively designed. Accordingly, we hold that this questioned ruling on evidence, if error at all, amounted to harmless error.
 
 
 21
 Thirdly, appellants argue that the trial court erred in ruling that the evidence was insufficient to establish a claim of strict product liability resting upon the manufacturer's failure to attach lighting instructions upon the water heater or to furnish an instruction manual to the user. In dismissing these theories of liability, the court noted that no competent evidence established that lighting instructions or an instruction manual did not accompany the heater upon installation. The installer testified only that he did not "remember" the existence of lighting instructions upon the heater or installation instructions accompanying the heater. No dispute exists that following installation of the heater in the school, someone had removed the heater door cover over the control unit. Taking into consideration that lighting instructions might have been placed upon the missing door, and the lack of positive testimony concerning the absence of lighting and installation instructions on delivery to the school, we hold the trial court ruled correctly on this liability issue.
 
 
 22
 We have also considered appellants' fourth claim attacking the trial court's evidentiary rulings that sustained objections to questions put to two of appellants' expert witnesses. In light of the whole record of this seven-day trial, these rulings excluding evidence cannot be said to constitute prejudicial error.
 
 
 23
 The appellants' fifth and final contention that the trial judge possessed "at the very least, an unconscious bias * * * against the products liability concept" is completely unsupported. The record demonstrates that an able, knowledgeable, and experienced trial judge conducted a proper and fair trial without prejudicial error. Thus, appellants' assertion of bias is without merit. We do note from our reading of the record that appellants' claims against these manufacturers rested upon a very tenuous basis that undoubtedly accounts for the verdict for appellees.
 
 
 24
 Affirmed.
 
 
 
 [1]
 The case was tried before a jury, The Honorable Warren K. Urbom, Chief Judge for the District of Nebraska, presiding
 
 
 [2]
 The operation of a similar valve is described in Raney v. Honeywell, 540 F.2d 932, 934-35 (8th Cir. 1976)
 The control valve operates as a thermostat to regulate the water temperature as well as a safety valve. The safety function is accomplished through the use of a thermocouple positioned adjacent to the pilot light. The heat from the pilot causes the couple to operate an electrical circuit which by means of an electromagnet holds the spring-loaded safety valve in the open position. Whenever the pilot light goes out, the lack of heat causes the thermocouple to cease to provide the current necessary to keep the safety valve open and it automatically closes. Thus, when the water in the tank cools to the point that more heat is called for, the safety valve prevents unburned gas from escaping in the room and creating the danger of an explosion.
 
 
 [3]
 Fed.R.Evid. 407 provides:
 When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.