**Edward Gene WILLIAMS, Appellant,**

v.

**WAL–MART STORES, INC., Appellee.**

**No. 89–1624.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 13, 1990.

Decided Dec. 31, 1990.

Rehearing and Rehearing En Banc
Denied March 21, 1991.

John L. Woodward, Steelville, Mo., for appellant.

Lisa A. Green, St. Louis, Mo., for appellee.

Before McMILLIAN and FAGG, Circuit Judges, and HEANEY, Senior Circuit Judge.

McMILLIAN, Circuit Judge.

Edward Gene Williams appeals a final judgment entered in the District Court for the Eastern District of Missouri upon a jury verdict finding Wal–Mart Stores, Inc., not liable for injuries appellant allegedly sustained in a Wal–Mart store in Sullivan, Missouri. For reversal, appellant challenges several evidentiary rulings of the district court excluding testimony by his expert medical witnesses. For the reasons discussed below, we reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

In this negligence action against Wal–Mart, appellant alleged that his back was injured when a shelf of ice coolers in a Wal–Mart store in Sullivan, Missouri, collapsed on him. The incident occurred on January 14, 1986.[1] Appellant's case consisted of his own testimony and the testimony of two Wal–Mart employees and several medical experts.

Appellant testified that he was standing near a display rack of ice coolers when suddenly he was knocked unconscious. Approximately fifteen seconds later he regained consciousness and noticed the ice coolers on the floor beside him. Appellant also noticed that the shelf on which the ice coolers had been displayed was leaning toward the floor. Two Wal–Mart employees testified that on the afternoon of January 14, 1986, they found appellant lying on the floor surrounded by four ice coolers. Each employee testified that the shelf holding the coolers had become dislodged but was not broken or damaged. One of the employees, Mr. Ray Harms, had installed the shelf earlier that day and placed the coolers on the shelf five or ten minutes before he

---

1. Appellant's complaint alleged that the accident occurred on January 15, 1986. However, at trial, appellant introduced evidence that the accident occurred on January 14, 1986.

discovered appellant lying on the floor. After stocking the shelf, Mr. Harms pressed his weight fully against it to make sure it was secure. He also remarked that appellant had been in the store for approximately two hours. Mr. Harms noticed appellant on four occasions during the two hours and testified he never saw appellant carrying any merchandise or pushing a shopping cart. When Mr. Harms asked appellant if he needed assistance, appellant did not respond.

Immediately following the accident, appellant was taken by ambulance to Sullivan Community Hospital. On January 16, 1986, appellant was transferred from Sullivan Community Hospital to St. Luke's Hospital and put under the care of Dr. Gary Myers, who testified at trial. Dr. Myers treated appellant for back pain on and off from January 1986 until January 1987. Twice in 1986 appellant was hospitalized due to his complaints of excruciating back pain. While in the hospital, appellant underwent surgery for hemorrhoids. Dr. Ben Myers, a diagnostic radiologist at St. Luke's Hospital, also testified at trial. Dr. Mayes performed three spinal examinations on appellant at Dr. Myers' direction. The examinations revealed two slightly bulging disks in appellant's lumbar spine.

Dr. Mayes testified that bulging disks in the lumbar spine are a frequent finding in a wide variety of patients and may or may not be related to a particular incident. Dr. Mayes was also unable to draw any connection between his findings and the alleged incident at Wal–Mart. He testified that in his opinion appellant's bulging disks were more attributable to normal wear and tear than a traumatic impact. The district court did not allow Dr. Myers, appellant's treating physician, to testify whether in his opinion appellant experienced a trauma to his lower back. Dr. Myers did, however, testify that in his opinion appellant's bulging disks were not caused by degenerative arthritis. During cross-examination, Dr. Myers testified that he could find no objective evidence of nerve damage that would explain appellant's complaints of pain and that appellant had no bruises, scrapes or contusions. In his medical report, Dr.

Myers expressed concern over the possibility of "emotional overlay," which he described as anxiety causing a patient's symptoms to magnify. Finally, Dr. Myers testified on cross-examination that he would tend to agree with Dr. Mayes' diagnosis that appellant's back trouble was the result of normal wear and tear and not connected to the alleged incident at Wal–Mart.

In March 1987, fourteen months after the incident at Wal–Mart, appellant visited Dr. Garth Russell, an orthopedic surgeon in Columbia, Missouri. Appellant's attorney referred him to Dr. Russe' Dr. Russell examined appellant and J Joseph Soha performed two magnetic resonance imagery tests. The tests revealed a herniated or ruptured disk. Dr. Russell performed surgery to correct appellant's herniated disk on April 6, 1987. Dr. Russell's videotaped deposition was played to the jury, but his opinion that appellant's herniated disk was caused by the incident at Wal–Mart was stricken from the record. Dr. Russell speculated that the disk may have been herniated in July 1986, but also admitted that herniated disks can be caused by numerous physical activities.

Dr. Myers was also questioned about the significance of appellant's herniated disk. Dr. Myers testified that it could have been related to the bulging disks diagnosed after the incident at Wal–Mart if no other trauma occurred between January 1986 and March 1987. Dr. Myers also testified that a slightly bulging disk such as that found in appellant's spine is unlikely to herniate without some intervening stress and that, in his opinion, appellant's back condition had improved, not worsened, by the time of appellant's last visit in January 1987.

Wal–Mart argued to the jury that appellant failed to demonstrate any negligence on its part or any connection between the alleged negligence and appellant's injuries. Wal–Mart argued that appellant's bulging disks were not related to the alleged incident at Wal–Mart but rather were caused by normal wear and tear and that some intervening activity caused appellant's disk

to herniate fourteen months after the alleged incident. Wal–Mart also argued that appellant's subjective complaints of pain were not credible. One witness, who first met appellant in 1980, saw appellant run across his yard and jump a two-foot wall in June 1986. Wal–Mart also called several witnesses who worked with appellant at the Tivoli Hills Resort in Clarksville, Missouri, after his surgery in the spring of 1987. They testified that they witnessed appellant doing strenuous work including lifting heavy items.

The case was submitted to the jury on a theory of *res ipsa loquitur*.[2] The jury returned a verdict in favor of Wal–Mart. This appeal followed.

## II. EXPERT MEDICAL TESTIMONY

Appellant challenges several evidentiary rulings involving the testimony of his medical experts. Specifically, appellant challenges the district court's refusal to allow Dr. Myers and Dr. Russell to testify whether they believed appellant experienced a trauma to his lower back.[3] Appellant also challenges the court's refusal to allow Dr. Mayes to give his opinion on whether bulging disks can result from a trauma.

■ An expert witness may give his or her opinion if it will help the trier of fact understand the evidence or determine a fact in issue. Fed.R.Evid. 702. Such testimony is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact. Fed.R.Evid. 704(a). A trial court may, however, exclude opinion testimony if it is so couched in legal conclusions that it supplies the fact finder with no information other than what the witness believes the verdict should be. *Hogan v.*

*AT & T*, 812 F.2d 409, 411 (8th Cir.1987) (*Hogan*). " '[D]oubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility.' " *Larabee v. MM & L Int'l Corp.*, 896 F.2d 1112, 1116 n. 6 (8th Cir.1990) (quoting J. Weinstein & M. Berger, Weinstein's Evidence ¶ 702[02], at 702–30 (1988)). In *Hurst v. United States*, 882 F.2d 306, 311 (8th Cir.1989) (citing *Loudermill v. Dow Chemical Co.*, 863 F.2d 566, 570 (8th Cir. 1988)), we also noted that "[a] trial court should exclude an expert opinion only if it is so fundamentally unsupported that it cannot help the factfinder."

■ A trial court's ruling excluding expert testimony is reviewed on appeal under the abuse of discretion standard. *Hogan*, 812 F.2d at 410; *Soo Line R.R. v. Fruehauf Corp.*, 547 F.2d 1365, 1374 (8th Cir.1977). An abuse of discretion will, however, only constitute reversible error if it affects a substantial right of the party challenging the ruling. Fed.R.Evid. 103(a); Fed.R.Civ.P. 61; *Strong v. Mercantile Trust Co.*, 816 F.2d 429, 432 (8th Cir.1987) (*Strong*), cert. denied, 484 U.S. 1030, 108 S.Ct. 759, 98 L.Ed.2d 771 (1988); *Hogan*, 812 F.2d at 410, 412. In addition, a litigant has not preserved for appellate review a challenge to a ruling excluding evidence unless the substance of the evidence was made known to the trial court by offer of proof or was apparent from the context within which the question was asked. Fed. R.Evid. 103(a)(2); *Strong*, 816 F.2d at 431. When a party has failed to preserve an evidentiary issue for appellate review, we reverse only when there is plain error. *Higgins v. Hicks Co.*, 756 F.2d 681, 684 (8th Cir.1985) (*Higgins*).

**2.** The jurors were instructed to return a verdict for appellant if they found that (1) Wal–Mart's employees installed the shelf and placed the coolers on the shelf, (2) the shelf came loose causing the coolers to fall on appellant, (3) such occurrence was the direct result of Wal–Mart's negligence, and (4) appellant sustained damage as a direct result of such negligence.

**3.** Counsel for appellant asked Dr. Myers the following question:
Doctor, taking into consideration your education, training and experience and further

taking into consideration the history that you received with regard to this patient, taking into consideration your care and treatment, examinations of this patient, do you have an opinion considering all those factors based upon a reasonable degree of medical certainty with respect to whether or not Ed Williams had experienced a trauma to his lower back? Wal–Mart objected on the grounds of an improper hypothetical. The district court sustained the objection.

## A.

With these standards in mind, we turn to the propriety of the court's refusal to allow appellant's counsel to ask Dr. Myers and Dr. Russell whether in their opinion appellant experienced a trauma to his lower back. Appellant argues that he was not asking each witness to state whether the shelf actually fell on appellant but rather was asking whether appellant's back injuries were or could have been caused by a trauma. Appellant further argues that, contrary to the district court's belief, expert medical witnesses are allowed to give their opinions on what may have caused the injuries they treated. While Wal–Mart concedes that medical witnesses are entitled to give their opinion on the cause of injury, it argues that asking each witness whether appellant experienced a trauma is tantamount to asking whether the accident actually occurred.

We disagree with Wal–Mart's interpretation of the questions posed by appellant. Asking Dr. Myers and Dr. Russell whether appellant experienced a trauma was not tantamount to asking them whether in their expert opinion the alleged incident at Wal–Mart actually occurred. The jurors knew that appellant's medical experts did not witness the alleged accident and therefore were not qualified to comment on the truth of appellant's allegations. Furthermore, the term "trauma" typically implies injury resulting from a sudden shock. *American Heritage Dictionary* 1289 (2d college ed. 1982) (defining "trauma" as "a

wound, especially one produced by sudden physical injury"); *Webster's Third New International Dictionary* 2432 (1966) (defining "trauma" as "an injury or wound to a living body caused by application of external force"). A reasonable juror, therefore, would have understood each expert's response to indicate whether he believed appellant's injuries were caused or could have been caused by a sudden shock. As Wal–Mart concedes, what caused or could have caused appellant's back pain and bulging disks was a proper subject for expert medical testimony because the expert's opinion would have been helpful to the jury. *Svenson v. Mutual Life Ins. Co.*, 87 F.2d 441, 445 (8th Cir.1937); *Kimmie v. Terminal R.R. Ass'n*, 334 Mo. 596, 66 S.W.2d 561, 565 (1933).

We believe the district court abused its discretion in this instance. Given that appellant's questions could only reasonably be understood as relevant to the cause of his injuries, which is clearly within the scope of expert medical testimony, we hold that the district court abused its discretion by refusing to allow appellant to ask his medical experts whether he experienced a trauma to his back.[4]

Our inquiry, however, does not end here. Wal–Mart argues that because appellant failed to make any offer of proof after the objections were sustained, he failed to preserve the error for appeal. *See* Fed.R. Evid. 103(a)(2). Wal–Mart asserts that our review is therefore limited to the plain er-

---

**4.** For the same reasons, we hold that the district court also abused its discretion by refusing to allow appellant's counsel to phrase his question to Dr. Myers in the form of a hypothetical:
[COUNSEL FOR APPELLANT]: All right. Doctor, I want to ask you a hypothetical question. I want you to assume that the following is true. Assume that on the afternoon of January 14, 1986, the plaintiff, Edward G. Williams was then a male person, 29 years of age. Assume that—
THE COURT: Let me state this. If you're starting in to assuming about this accident, the answer will be no. This is a doctor. He's not an expert in that field. He's confined to the medical. He's not an expert in the other field. That's for the jury to determine, not this witness.... He can testify what he knows about the medical part. I have been

letting that in and that's true, but about the other outfit, as to what may have caused it or anything else, he's no expert in that field and if they object to it, the answer will be no because that's just not the way you prove it, in my opinion. That's for the jury. You're invading the province of the jury, in my judgment.
[COUNSEL FOR APPELLANT]: If I understand then your statement is that this witness cannot give an opinion with regard to how Mr. Williams was injured, is that true?
THE COURT: That's my opinion. I don't think he can. That's for the jury to determine. That's their problem, not the doctor's. He can tell you to his heart's content what he knows about him medically. That's where he's an expert and that's it.

ror standard and that appellant has failed to show a miscarriage of justice. *See Higgins*, 756 F.2d at 684.

■ We agree with Wal–Mart that because appellant made no offer of proof we should review under the plain error standard and reverse only if there has been a miscarriage of justice. However, we believe the district court's error amounts to plain error and is grounds for a new trial. The district court's repeated refusal to allow appellant to ask his expert witnesses their opinion regarding the cause of appellant's injuries and then its refusal to allow appellant to rephrase the question in the form of a hypothetical denied appellant a fair opportunity to litigate his case. Moreover, while the district court denied appellant the opportunity to elicit from his own medical experts their opinion on the cause of his injuries, it did allow Wal–Mart on cross-examination to question the doctors about the likely cause of appellant's injuries.

The district court responded harshly to appellant's questioning of his expert witnesses. Indeed, the record indicates that the district court warned appellant's counsel that he would be held in contempt if he brought up again the issue of whether a medical expert can give his or her opinion on the cause of the injuries treated. Under the circumstances, we decline to treat appellant's failure to make an offer of proof as a failure to preserve this issue for appellate review.

Appellant may not have been a credible plaintiff. However, that was for the jury, not the district court, to decide. Wal–Mart suggests that the jury verdict reflected its belief that the incident never occurred at Wal–Mart or that Wal–Mart was not responsible for the collapsed shelf. However, we have no way of knowing from the general verdict returned by the jury which element of appellant's negligence action

the jury did not find. Because the jury may very well have returned its verdict in favor of Wal–Mart on the issue of causation, the excluded testimony could have been critical to appellant's case.

## B.

■ We also believe that the district court should have permitted appellant to ask Dr. Mayes whether in his opinion a trauma can cause bulging disks. This question was within the scope of proper medical expert testimony. Appellant, however, made no offer of proof when Wal–Mart's objection was sustained. Unlike the earlier rulings, this error does not amount to plain error and is therefore not grounds for reversal. This issue may arise on remand, even though Dr. Mayes' testimony was unfavorable on the issue of causation. On direct examination, he testified that appellant's bulging disks were probably the result of normal wear and tear and that bulging disks are a frequent finding in a wide variety of patients which may or may not be related to a particular incident. On cross-examination, Wal–Mart's counsel asked Dr. Mayes whether the results of the scan taken on January 17, 1986, were consistent with the occurrence of a trauma such as that alleged to have taken place three days earlier. Dr. Mayes responded that in his opinion it was not accurate to draw a connection between appellant's bulging disks and the alleged incident. Later, Dr. Mayes again testified that appellant's bulging disks were more likely attributed to normal wear and tear than to the impact alleged to have occurred at the Wal–Mart store in Sullivan.

## III. MEDICAL HISTORY

■ Appellant also argues the district court erred in refusing to allow Dr. Myers to testify about appellant's medical history.[5] Because of the likelihood that a sim-

---

5. Dr. Myers was allowed to state that he had an opinion as to whether appellant suffered a trauma, but when Dr. Myers began to tell the jury that he based his opinion on the history appellant had provided him, the district court sustained an objection:

THE COURT: Be sustained as to form. Well, I'll overrule that. The answer to that is yes or no.
[DR. MYERS]: Yes, I have an opinion.

ilar issue will recur on remand, we will briefly address this issue here. In support of his argument, appellant cites the hearsay exception for statements made for purposes of medical diagnosis, Fed.R.Evid. 803(4), and this court's decision in *United States v. Iron Shell*, 633 F.2d 77 (8th Cir. 1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981), defining the parameters of that exception. While appellant correctly states the law on hearsay evidence, the district court did not exclude the testimony on grounds that it was hearsay. Wal–Mart objected on the ground that the medical history would reveal Dr. Myers' opinion on whether appellant experienced a trauma. Sustaining Wal–Mart's objection, the district court reasoned:

> This man is not entitled, in my opinion, to pass on what he was told as the basis for it. He's supposed to tell you what he found and so on. We're not—he's not—we're not testing the credibility of the plaintiff with respect to that. A lot of the things that the people tell doctors isn't true. You know that and he'll tell you that too.

As we held in Part II(A), Dr. Myers' opinion on the cause of appellant's injuries was admissible expert testimony under Fed.R.Evid. 702. Therefore, the district court should have permitted Dr. Myers to explain the basis of his opinion *and* the substance of it.

## IV. TESTIMONY REGARDING HOSPITAL CHARGES

 Appellant also challenges the district court's refusal to allow Dr. Myers to testify to the reasonableness of appellant's hospital bills. Because the same issue may

> [COUNSEL FOR APPELLANT]: And what factors would form the basis of your opinion in that respect?
> [DR. MYERS]: Basically the history—
> [COUNSEL FOR WAL–MART]: Your Honor, I think this is an obtuse way of getting an opinion. I'm going to object to the extent that I think he's asking the doctor for an opinion without the proper hypothetical.
> THE COURT: I think so, too. I'll sustain the objection as to form. You're going to have to properly ask the question.

arise on remand, we will briefly discuss the merits of appellant's argument.

Appellant sought to introduce into evidence four exhibits reflecting the charges he incurred at St. Luke's Hospital. Wal–Mart objected on the grounds that appellant had not laid the proper foundation for their admission through testimony as to the reasonableness of the charges. The district court refused to allow Dr. Myers to testify to the reasonableness of the hospital bills because he was not responsible for the hospital's billing. Even though appellant indicated he only wanted Dr. Myers to establish that part of the bill pertained to appellant's hemorrhoid problem and not to his lower back pain, the district court continued to sustain the objection.

We believe that Dr. Myers was qualified to testify to the reasonableness of the hospital charge, part of which appellant claims included Dr. Myers' services to appellant. *See* Annotation, *Necessity and Sufficiency as to Reasonableness of Amount Charged, or Paid for Accrued Medical, Nursing, or Hospital Expenses*, 12 A.L.R.3d 1347, 1387 (1967 & Supp.1989). We also believe he was qualified to distinguish the expenses incurred as a result of appellant's back injuries from those expenses incurred as a result of appellant's hemorrhoid problem.

## V. CLOSING ARGUMENT

 Finally, appellant argues that the district court erred in striking part of his closing argument. During his rebuttal argument, appellant's counsel argued that Dr. Russell testified that appellant was injured in Wal–Mart on January 14, 1986.[6] In his videotaped deposition, Dr. Russell testified as follows:

> This man is not entitled, in my opinion, to pass on what he was told as the basis for it. He's supposed to tell you what he found and so on. We're not—he's not—we're not testing the credibility of the plaintiff with respect to that. A lot of the things that the people tell doctors isn't true. You know that and he'll tell you that, too.

6. Although Dr. Russell testified that he believed appellant was injured on January 16, 1986, he was mistaken as to the date.

[COUNSEL FOR APPELLANT]: I believe you testified that you first saw this patient on January the 15th, 1986; is that correct, Doctor?

[DR. RUSSELL]: No. That was the date of his injury. I first saw him on March the 26th, 1987.

. . . .

[COUNSEL FOR APPELLANT]: Can you state, with a reasonable degree of medical certainty, the duration of Mr. Williams' disability, as you've described?

[DR. RUSSELL]: ... [I]t is my medical opinion that he would have been unable to work following the injury of January the 15th of 1986.

Wal–Mart objected to appellant's rebuttal argument on the ground that it mischaracterized Dr. Russell's testimony.[7] The district court sustained the objection.

Regulation of the parties' closing arguments rests within the discretion of the trial court and will not be disturbed unless a clear abuse of discretion is found. *United States v. Nabors,* 761 F.2d 465, 470 (8th Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 123 (1985); *United States v. Harvey,* 756 F.2d 636, 646 (8th Cir.), *cert. denied,* 474 U.S. 831, 106 S.Ct. 97, 88 L.Ed.2d 79 (1985). We hold that the district court did not abuse its discretion in ordering the remark stricken from the record. Dr. Russell's testimony cannot reasonably be construed as supporting the proposition that appellant was injured in Wal–Mart on January 14, 1986, because Dr. Russell was not a witness to the accident. Appellant's counsel should not have suggested as much to the jury. *See Estes v. Dick Smith Ford, Inc.,* 856 F.2d 1097, 1106

(8th Cir.1988) (trial court has responsibility to ensure that counsel's closing argument does not misrepresent the evidence).

CONCLUSION

Because the district court abused its discretion by denying appellant the opportunity to ask his medical experts whether in their opinion appellant experienced a trauma and whether the alleged incident at Wal–Mart caused appellant's injuries, we reverse and remand for further proceedings consistent with this opinion.

FAGG, Circuit Judge, dissenting.

Because I believe the panel mistakenly finds plain error on a barren record, I respectfully dissent.

The panel correctly observes that Williams's lawyer asked two doctors called by Williams for their opinions on medical causation; the district court erroneously excluded this testimony; the doctors' opinions were not apparent from the questions asked; another doctor called by Williams had given unfavorable testimony on the issue of causation; and Williams's lawyer did not make an offer of proof.

Based on this scenario, however, I disagree with the panel's conclusion the district court's rulings are a miscarriage of justice. Without knowing how the doctors would have answered the causation questions, there is no basis in the record for the panel's holding the exclusionary rulings plainly affected the integrity of the trial. *See* Fed.R.Evid. 103(d). Plain error must be found on the record. *United States v. Young,* 470 U.S. 1, 16, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985). We are not permitted

---

7. Appellant's rebuttal argument proceeded as follows:

[COUNSEL FOR APPELLANT]: I again want to make reference to the testimony of Dr. Russell wherein he said that Ed Williams was injured on January the 15th, 1986.

[COUNSEL FOR WAL–MART]: Your Honor—

THE COURT: Be sustained, be stricken, the jury will disregard it. He didn't know. He wasn't there.

[COUNSEL FOR APPELLANT]: Your Honor—

[COUNSEL FOR WAL–MART]: There was no such testimony.

THE COURT: There's no such testimony.

[COUNSEL FOR APPELLANT]: There is. I can show you the pages.

THE COURT: But he didn't testify to it.

[COUNSEL FOR APPELLANT]: Yes, he did. It's in the deposition.

[COUNSEL FOR WAL–MART]: Your Honor—

THE COURT: It wasn't put in here. I sustained the objection to that. The jury will disregard that argument. He wasn't there. All he knows is what somebody told him and he's not in position to say, and I think you'll agree that he didn't know what happened.

to overlook the failure of Williams's lawyer to preserve essential evidence by an offer of proof. *Id.*

Although the district court committed error, Williams must show his substantial rights have been prejudiced by the rulings. Fed.R.Evid. 103(d); *Young v. Rabideau,* 821 F.2d 373, 376 (7th Cir.) (party challenging exclusion of evidence has burden of showing exclusion was prejudicial), *cert. denied,* 484 U.S. 915, 108 S.Ct. 263, 98 L.Ed.2d 221 (1987); *Tyler v. White,* 811 F.2d 1204, 1207 (8th Cir.1987) (same). When the district court excluded Williams's medical evidence, Williams's lawyer had to make an offer of proof revealing the doctors' answers. *See* Fed.R.Evid. 103(a)(2); *United States v. Barta,* 888 F.2d 1220, 1224 (8th Cir.1989). Because the lawyer failed to do so, this panel has no way of divining from the record whether the excluded testimony would be helpful or harmful to Williams. *See Yost v. A.O. Smith Corp.,* 562 F.2d 592, 595 (8th Cir.1977). Short of resorting to a hypothetical record that is not before us, "there is no way in which the [panel] can see that the error ... amounts to plain error." 21 C. Wright & K. Graham, *Federal Practice and Procedure* § 5043, at 236 (1977).

I also disagree with the panel's conclusion that "[t]he district court's repeated refusal to allow [Williams's lawyer] to ask [the] witnesses their opinion [on medical causation] and [the court's] refusal to allow [Williams's lawyer] to rephrase the question in the form of a hypothetical denied [Williams] a fair opportunity to litigate his case." *Ante* at 1362. The questions Williams's lawyer put to the doctors were not artfully framed. Indeed, the district court believed Williams's lawyer was asking the doctors to vouch for Williams's version of the accident facts. Instead of explaining his purpose by an offer of proof, Williams's lawyer persisted in asking the same questions. The district court finally cut off the line of questioning.

We have held the district court does not abuse its discretion in preventing questioning aimed at eliciting evidence already rejected "when its [admissibility] is not af-firmatively demonstrated" by an offer of proof. *Thompson v. Lillehei,* 273 F.2d 376, 385 (8th Cir.1959). Nothing in the colloquy between the district court and counsel suggests Williams's lawyer was prevented from making an offer of proof to show the pertinent responses to the questions already asked.

Thus, contrary to the panel's view, Williams's lawyer's failure to make an offer of proof was the death knell to this appeal. *See ante* at 1362. The jury's verdict should be sustained.