# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2048

_____

| | |
|---|---|
| In re Arbitration Between Dow Corning Corporation, | * |
| | * |
| | * |
| Petitioner - Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Eastern District of Missouri. |
| Safety National Casualty Corporation, | * |
| | * |
| Respondent - Appellee. | * |

_____

Submitted: January 13, 2003

Filed: July 9, 2003

_____

Before LOKEN,[*] FAGG, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

LOKEN, Chief Judge.

Safety National Casualty Corporation (Safety) issued three "excess umbrella" liability insurance policies to Dow Corning Corporation (Dow Corning) covering the period December 1, 1983 to December 1, 1984. The policies included a mandatory arbitration provision. Many years later, Safety denied coverage for claims by consumers that silicon breast implants manufactured by Dow Corning caused them

_____

[*]The Honorable James B. Loken became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2003.

to suffer autoimmune disease. In June 1998, Dow Corning commenced arbitration of the coverage dispute. The critical issue was when coverage arose under the policies for autoimmune disease injuries.

Dow Corning and Safety could not amicably select the three-member panel of arbitrators required by the arbitration clause in the policies. Safety moved to compel arbitration under section 4 of the Federal Arbitration Act (FAA), 9 U.S.C. § 4, seeking to resolve Dow Corning's objection to Safety's party-arbitrator. Dow Corning responded with a cross-motion under section 5 of the FAA, asking the district court to appoint the neutral member of the three-member panel. The district court denied both motions. We affirmed, remanding with directions that the parties "select an umpire and get on with the arbitration of their coverage dispute." Dow Corning Corp. v. Safety Nat'l Cas. Corp., 205 F.3d 1345 (8th Cir. 2000) (table).

After a hearing in July 2001, the panel issued a 2:1 decision in favor of Safety on the coverage issue, declaring its decision to be binding on the parties. Dow Corning filed a motion to vacate the award under section 10 of the FAA, 9 U.S.C. § 10. The district court denied the motion. Dow Corning appeals, arguing that the award should be vacated under section 10(a)(4) because the arbitrators exceeded their authority when they declared their decision binding and allowed the pre-hearing appointment of a substitute arbitrator; and that the award should be vacated under section § 10(a)(2) because of the neutral umpire's evident partiality. We modify the district court's judgment to reflect our conclusion that the arbitrators' award is non-binding and otherwise affirm.

## I. The Binding Arbitration Issue

Arbitration usually results in a final determination that is binding on the parties to the underlying dispute, but the parties may instead agree to non-binding arbitration, in which case the arbitrators' decision is likely to be a precursor to further litigation

on the merits of the dispute. The distinction is significant. "Mandatory arbitration prior to resort to a court is a different concept from mandatory arbitration precluding resort to a court." Orlando v. Interstate Container Corp., 100 F.3d 296, 300 (3rd Cir. 1996) (concluding that a collective bargaining agreement called for mandatory but not binding arbitration).

If contracting parties agree to binding arbitration, if their agreement is within the reach of the FAA, and if they "have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration," then a federal court asked to confirm the award "must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11." 9 U.S.C. § 9. But in this case, Safety did not ask the district court to confirm the award under section 9, so we need not decide whether the arbitration agreement contained the judgment-entering recitation required by section 9. See PVI, Inc. v. Ratiopharm GMbH, 135 F.3d 1252 (8th Cir. 1998). However, Safety did ask the arbitrators to declare their decision binding, and they did so over Dow Corning's objection. Dow Corning moved to vacate the award under section 10(a)(4), arguing the panel exceeded its authority in purporting to render a binding decision. The district court agreed that the decision was binding, and Dow Corning appeals that ruling.

1. As this is a question of the contracting parties' intent, we begin with the terms of the arbitration clause in the insurance policies. Parties intending binding arbitration should say so explicitly in the agreement to arbitrate, either by providing that the arbitration award will be "final and binding," or words to that effect, or by incorporating by reference the rules of the American Arbitration Association or a similar arbitral body that expressly provide for binding arbitration. See, e.g., Rainwater v. Nat'l Home Ins. Co., 944 F.2d 190, 192-94 (4th Cir. 1991) (incorporating AAA rules providing for entry of judgment upon the arbitration award makes the arbitration binding); Daniel Constr. Co. v. Int'l Union of Operating Eng'rs, Local 513, 738 F.2d 296, 298-300 (8th Cir. 1984) (collective bargaining agreement

provided for "final and binding" arbitration).  However, the agreement to arbitrate in the Safety insurance policies contained no such provision.  It merely provided:

> As a condition precedent to any right of action under this Policy, any dispute arising out of this Policy shall be submitted to the decision of a board of arbitration. . . . The members of the board of arbitration shall be active or retired, disinterested officials of insurance or reinsurance companies. . . . The board shall make its decision with regard to the custom and usage of the insurance and reinsurance business.

Dow Corning argues that the "condition precedent" clause confirms the parties intended non-binding arbitration.  Though the clause suggests that arbitration of a policy dispute will be followed by litigation, and thus is non-binding, like the district court we do not find this textual clue conclusive.  It can also be read as simply recognizing that even binding arbitration is often followed by litigation, as the Fourth Circuit construed a similar provision in Rainwater, 944 F.2d at 194:

> [The court] read[s] "condition precedent" to some extent as an artifact left over from the days of hostility toward arbitration.  To the extent that the phrase has meaning, we find that it does not undermine the binding nature of arbitration, but instead applies to the confirmation process permitted by [the FAA] or to other litigation in which the arbitration award would be final but just a sub-text in some larger litigation context.

With the arbitration clause ambiguously silent on this issue, we must determine whether the parties to these 1983 excess liability insurance policies intended to contract for binding arbitration.  Though evidence of custom and usage among parties to this type of insurance would be relevant, neither party submitted any such evidence.  Looking more closely at the text of the agreement, we note the policies require that *all three* arbitrators be "active or retired, disinterested officials of insurance or reinsurance companies" and that their decisions be made "with regard to the custom and usage of the insurance and reinsurance business."  This sounds very

-4-

much like a provision designed for the resolution of technical disputes between an insurance company and its reinsurer. Here, on the other hand, the provision was inserted into an excess liability policy, where it applies to coverage disputes between an insurer and its insured and provides a decidedly pro-insurer "tilt" to the proceedings. An insured (other than another insurance company) is unlikely to agree that the results of such a proceeding will be binding, that is, judicially unreviewable on the merits under the FAA.

Though federal policy favors arbitration, and that normally means binding arbitration, we know of no federal policy favoring *binding* arbitration of insurance coverage disputes. Safety -- which drafted the policies and presumably had greater knowledge of the custom and practices of excess liability insurers and reinsurers -- presented no extrinsic evidence that binding arbitration was intended and cited no federal case in which an arbitration agreement *entirely silent on this question* was construed as providing for binding arbitration. On this record, we conclude the excess liability policies provided for mandatory but non-binding arbitration.

2. The district court acknowledged that the "condition precedent" language in the policies, though ambiguous, suggests that non-binding arbitration was initially intended. But the court concluded that Dow Corning subsequently agreed to binding arbitration of this coverage dispute, first in a 1994 settlement agreement dismissing Safety from a pending multi-insurer coverage suit, and then again in a July 1999 consent order entered in Dow Corning's Chapter 11 bankruptcy proceeding. In the settlement agreement, Dow Corning and Safety agreed "to arbitrate all coverage issues under [the policies]" if negotiations failed to resolve the dispute. The bankruptcy consent order, entered with the arbitration in process, provided that Safety's liability under the policies:

> will be fully and finally adjudicated (i) in the existing arbitration action . . . and/or (ii) in subsequent actions in the appropriate forum addressing

matters of such insurance coverage and liability not resolved in such Arbitration and/or addressing enforcement thereof . . . .

We cannot agree that the settlement agreement was "an agreement to engage in binding arbitration." It was an agreement to arbitrate under the policies if the dispute could not be informally resolved. This added nothing to the initial agreement to engage in mandatory, non-binding arbitration. The peculiar terms of the consent order present a closer question. It provided that the coverage dispute will be "finally adjudicated" through the pending arbitration "and/or" subsequent litigation. This language imperfectly describes a process beginning with mandatory arbitration. The process as described could be either binding or non-binding from the standpoint of its enforceability under the FAA. As Dow Corning has consistently argued that the policies called for non-binding arbitration, we conclude that the consent order, like the settlement agreement, preserved the parties' conflicting positions on this issue.

3. We must next determine the impact of our conclusion that the parties contracted for non-binding arbitration. The arbitrators doubtless exceeded their authority in declaring their decision to be binding, because that issue goes to the scope of their authority. See generally First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995). In any event, we have concluded their award was non-binding as a matter of law. This error is grounds for modifying the award by deleting the offending declaration. See 9 U.S.C. § 11(b). It would also require reversing the confirmation of an award under 9 U.S.C. § 9, because an award must be binding to be confirmed under section 9's highly deferential standard of review. But our conclusion that the award is non-binding does not warrant vacating the entire award. See Davis v. Prudential Sec., Inc., 59 F.3d 1186, 1196 (11th Cir. 1995) (vacating part of an award that exceeded the arbitrators' authority but confirming remainder of the award).

4. There remains a threshold question not addressed by the parties -- whether our conclusion that the arbitration was non-binding deprives us of jurisdiction to address Dow Corning's additional grounds for vacating the entire award under FAA § 10. This issue of the FAA's reach has arisen in the context of agreements to arbitrate that attempt to prescribe a standard of judicial review that is less deferential to the arbitrators than that prescribed in FAA § 10. One circuit has held that a provision calling for expanded review of the merits of an arbitration award is unenforceable under the FAA. See Bowen v. Amoco Pipeline Co., 254 F.3d 925, 937 (10th Cir. 2001). At least one commentator has gone further and suggested that such provisions result in agreements that are not sufficiently "final" to be governed by the FAA. See generally Amy J. Schmitz, Ending a Mud Bowl: Defining Arbitration's Finality Through Functional Analysis, 37 GA. L. REV. 123 (2002). This case presents the issue in a different context. Dow Corning did not ask the district court to review the merits of the arbitrators' award, nor did Safety move to confirm the award under section 9. Thus, the only question is whether the FAA authorizes section 10 review of a mandatory but non-binding award. We conclude that it does.

Binding arbitration is no doubt the norm under the FAA, but no express language limits the statute to binding arbitration agreements. Other circuits have held that the FAA applies to at least some agreements to engage in mandatory, non-binding arbitration. See United States v. Bankers Ins. Co., 245 F.3d 315, 322 (4th Cir. 2001); Wolsey, Ltd. v. Foodmaker, Inc., 144 F.3d 1205, 1207-09 (9th Cir. 1998); Harrison v. Nissan Motor Corp., 111 F.3d 343, 349-50 (3d Cir. 1997). We signaled a similar view of the statute in UHC Mgmt. Co. v. Computer Sciences Corp., 148 F.3d 992, 997 (8th Cir. 1998), when we commented that this court "will not interpret an arbitration agreement as precluding the application of the FAA unless the parties' intent that the agreement be so construed is abundantly clear."

At different times, both parties asked the district court for relief under sections 4, 5, and 10 of the FAA. While the present appeal will not finally resolve their

coverage dispute, addressing the additional section 10 issues raised by Dow Corning will significantly advance the dispute resolution process. The policies provide that non-binding arbitration is a "condition precedent" to subsequent litigation. Dow Corning argues that the now-completed arbitration was fundamentally defective and therefore a nullity. If Dow Corning is correct, the entire award will be vacated, presumably requiring the parties to again arbitrate the dispute before commencing litigation. If Dow Corning's section 10 arguments are rejected, the parties are free to commence coverage litigation in which the non-binding award will presumably be given such persuasive weight as the court concludes it deserves. For these reasons, we conclude we have jurisdiction to decide the additional section 10 issues.

## II. The Substitute Arbitrator Issue

Dow Corning argues that the arbitration award must be vacated under 9 U.S.C. § 10(a)(4) because the panel exceeded its authority when Safety's party-arbitrator resigned and the two remaining panel members directed Safety to appoint a substitute party-arbitrator. Review of this issue requires further factual background.

The policies provided for a panel of "two arbitrators and an umpire" and described the selection process in detail:

> Each party shall appoint its arbitrator, and the two arbitrators shall choose an umpire before instituting the hearing. . . . If the two arbitrators fail to agree upon the appointment of an umpire within four weeks after their nominations, each of them shall name three, of whom the other shall decline two and the decision shall be made by drawing lots.

After initiating the arbitration, Dow Corning appointed Benjamin Schenk as its party-arbitrator. Safety appointed Jack Nelson as its party-arbitrator. Schenk nominated three umpire candidates, while Dow Corning informally challenged Nelson's qualifications to serve. When Safety would not proceed with Nelson's status

unresolved, Dow Corning filed its FAA § 5 motion, urging the district court to choose an umpire from Schenk's list because Nelson had not timely nominated three umpires. The district court denied this motion and we affirmed, instructing the parties "to select an umpire and get on with the arbitration." Nelson then nominated three umpire candidates. Each party-arbitrator struck two of the other's nominees, and James Lyon, Nelson's third nominee, was selected as umpire by an agreed process akin to a coin flip or to "drawing lots."

One week later, Nelson resigned as Safety's party-arbitrator because his current employer was involved in the management of Dow Corning's pension assets. Dow Corning advised umpire Lyon and party-arbitrator Schenk that Nelson's withdrawal terminated their authority to hear the dispute. Lyon and Schenk instead ruled that Safety should appoint a substitute party-arbitrator. Safety named John Hyland as substitute party-arbitrator. Instead of filing a second FAA § 5 motion challenging this ruling, Dow Corning agreed to proceed with a "reservation of right" to challenge the panel's authority. We view this as a transparent attempt to preserve a threshold procedural issue in case Dow Corning eventually lost the arbitration on the merits.

On appeal, Dow Corning invokes "the general rule that where one member of a three-person arbitration panel dies before the rendering of an award and the arbitration agreement does not anticipate that circumstance, the arbitration must commence anew with a full panel." Trade & Transport, Inc. v. Natural Petroleum Charterers Inc., 931 F.2d 191, 194 (2nd Cir. 1991), followed in Marine Prods. Export Corp. v. M.T. Globe Galaxy, 977 F.2d 66 (2nd Cir. 1992). But as the district court recognized, the circumstances in this case distinguished it from those applying the so-called general rule and justified the panel's decision to proceed after Safety selected a substitute party-arbitrator. First, because the substitution occurred before the substantive arbitration hearing, the substitute party-arbitrator participated fully in the hearing, the panel's deliberations, and the preparation of the panel's decision. Compare In re Cia de Navagecion Omsil, S.A., 359 F. Supp. 898, 899 (S.D.N.Y.

1973). Second, the remaining arbitrators made a reasonable decision to allow Safety to choose its substitute party-arbitrator, the method of selecting party-arbitrators prescribed in the agreement to arbitrate. Third, as Dow Corning well knew, starting over would have deprived Safety of its "win" in the umpire selection process. The Second Circuit recognized in Marine Products, 977 F.2d at 68, that the general rule does not apply when a vacancy arises after the original panel has "rendered a final decision on any question."

Finally, and most importantly, Dow Corning acknowledges that a vacancy in an arbitration panel may be filled in the manner prescribed in the agreement to arbitrate. Here, the remaining arbitrators concluded that the agreement authorized them to proceed with a substitute party-arbitrator. In general, reviewing courts leave procedural issues for the arbitrators to decide. See El Dorado School Dist. # 15 v. Continental Cas. Co., 247 F.3d 843, 846-47 (8th Cir. 2001). Dow Corning argues the panel's ruling is not entitled to deference because the question concerned their authority. But even if that is true, the district court was expressly authorized by FAA § 5 to construe the arbitration agreement in this regard and to resolve the vacancy issue in the event the agreement did provide a method for doing so. Yet Dow Corning failed to file a section 5 motion challenging the panel's ruling on the substitution issue. In these circumstances, the district court correctly declined to vacate the award on this ground. See Brook v. Peak Int'l, Ltd., 294 F.3d 668, 674 (5th Cir. 2002).

### III. Umpire Lyon's Alleged Evident Partiality

Dow Corning next argues that we should vacate the arbitration award under section 10(a)(2) because umpire Lyon's conduct before and during the hearing demonstrated his evident partiality in three respects. We reject these contentions.

**A. Nondisclosure of Another Umpire Nomination.** Almost a year after Safety's party-arbitrator nominated Lyon to serve as umpire in this case, Safety nominated Lyon as a potential referee in another breast implant case involving Bristol-Meyers Squibb Company. Lyon was not chosen to serve in the Bristol-Meyers arbitration. Dow Corning nonetheless argues that his failure to promptly disclose the nomination in this proceeding demonstrates evident partiality within the meaning of section 10(a)(2). The district court rejected this contention, concluding that (i) Lyon and Safety did not have the type of ongoing relationship that required disclosure; (ii) the subsequent nomination did not create a conflict or bias, particularly because Lyon was not chosen to serve; (iii) Dow Corning and Safety had agreed to an umpire selection process permitting each to nominate umpire candidates "whose credentials suggest that they would be inclined to favor the nominating party"; and (iv) Lyon's insignificant relationship with Safety "has not established an appearance of, or actual bias."

We agree with the district court's reasoning. At the outset of the arbitration process, arbitrators must disclose "a substantial interest in a firm which has done more than trivial business with a party." Commonwealth Coatings Corp. v. Cont'l Cas. Co., 393 U.S. 145, 151-52 (1968) (White, J., concurring); see Olson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 51 F.3d 157, 159 (8th Cir. 1995). Here, when Lyon was nominated, Dow Corning was aware that Safety had nominated him to serve in two prior arbitrations, and that he had served in one. The Bristol-Myers nomination came well after Lyon was chosen as umpire in this case, and he was not chosen to serve in the Bristol-Myers case. Thus, the non-disclosure does not "*objectively* demonstrate such a degree of partiality that a reasonable person could assume that the arbitrator had improper motives." ANR Coal Co. v. Cogentrix of N. C., Inc., 173 F.3d 493, 501 (4th Cir.), cert. denied, 528 U.S. 877 (1999).

Moreover, in this case we doubt that being nominated for other arbitrations is "more than trivial business" within the meaning of Commonwealth Coatings. When

-11-

the parties agree to arbitration before disinterested persons who have experience in a specialized business or type of problem, the relatively small number of qualified arbitrators may make it common, if not inevitable, that parties will nominate the same arbitrators repeatedly. See Int'l Produce, Inc. v. A/S Rosshavet, 638 F.2d 548, 551-52 (2nd Cir.), cert. denied, 451 U.S. 1017 (1981) (maritime arbitration); Transit Cas. Co. v. Trenwick Reins. Co., 659 F. Supp. 1346, 1353-54 (S.D.N.Y. 1987) (insurance arbitration). "The parties to an arbitration choose their method of dispute resolution, and can ask no more impartiality than inheres in the method they have chosen." Delta Mine Holding Co. v. AFC Coal Props., Inc., 280 F.3d 815, 821 (8th Cir. 2001), cert. denied, 123 S. Ct. 87 (2002) (quotation omitted). We conclude that Lyon's failure to disclose the Bristol-Meyers nomination does not demonstrate evident partiality within the meaning of section 10(a)(2).

**B. Ex Parte Contacts.** After the panel held an organizational meeting, it issued a written summary prohibiting further ex-parte communications between the party-arbitrators and their respective parties but providing that umpire Lyon "may discuss administrative matters with an individual arbitrator or counsel when to do otherwise would be difficult or overly time consuming." Some months later, Lyon needed to confer with counsel regarding the scheduling of the arbitration hearing. Because Safety's counsel was in trial, Lyon deemed it impracticable to arrange a telephone conference call and instead talked to each party's counsel individually. Lyon first contacted Safety's counsel. In addition to discussing scheduling issues, Lyon told counsel that it would expedite the hearing if the parties limited expert testimony to witnesses having direct experience and education. Lyon then called Dow Corning's counsel and again expressed his view that expert testimony should be limited to witnesses with proper educational background and experience.

Dow Corning then wrote a letter to Lyon stating its belief that his telephone conversations with counsel individually were improper ex parte contacts and warranted his resignation. Counsel for Dow Corning and Safety exchanged letters

with each other and the panel on this issue. Lyon wrote counsel and the other panel members explaining that the telephone conversations were simply administrative in nature. Dow Corning alleged that Lyon said he was not interested in testimony relating to the trigger-of-coverage issue by an expert lacking "clinical or medical experience," a position that showed bias in favor of Safety. After further argument from Dow Corning and Safety, the panel ruled that no member would resign and the arbitration would continue. Schenk, Dow Corning's party-arbitrator, wrote separately, explaining that the "nature of these conversations does not trouble me, as neither party (nor the other arbitrators) was prejudiced by non-participation."

In the district court, Dow Corning primarily argued that umpire Lyon's ex parte contacts were misconduct requiring that the award be vacated under section 10(a)(3). In support, Dow Corning offered affidavit evidence from a former judge and noted arbitration expert opining that the ex parte contacts were prejudicial and violated both the prevailing ethical rules and the panel's own prohibition. The district court rejected this contention on the merits, correctly noting that Dow Corning was not prejudiced by the ex parte contacts because the panel did not later exclude the extensive expert evidence offered by Dow Corning at the hearing, and that a departure from the prevailing ethical norms for arbitrators is not grounds for vacating an award under FAA § 10. See Delta Mine, 280 F.3d at 820. The district court struck portions of the arbitration expert's affidavit on the ground that it expressed opinions on questions of law that were for the court to decide.

Dow Corning recasts this issue on appeal, arguing the ex parte communications demonstrated Lyon's evident partiality, contrary to section 10(a)(2), because Lyon contacted Safety's counsel first and his position regarding the relevance of expert testimony favored Safety's position on the critical trigger-of-coverage issue. In our view, this contention is without merit because the ex parte contacts, even if arguably improper, simply do not demonstrate evident partiality. Umpire Lyon had an "administrative" reason for contacting counsel (to discuss scheduling) and a basis for

deciding that he needed to contact them one at a time. Thus, his phone calls to counsel were ex parte communications authorized at the panel's organizational meeting. Lyon can be criticized for going beyond scheduling issues and discussing the scope of expert testimony. But the district court found that he did not solicit ex parte argument from either attorney, a finding that is not clearly erroneous, and the court concluded that the conversations "reflect his role as umpire and the attendant duty to assure that the arbitration proceeded in an efficient manner," a conclusion consistent with our decision in Painewebber Group, Inc. v. Zinsmeyer Trusts P'ship, 187 F.3d 988, 995 (8th Cir. 1999), cert. denied, 529 U.S. 1020 (2000).

On appeal, Dow Corning vehemently challenges the district court's decision to strike portions of the arbitration expert's affidavit. But that ruling provides no basis to reverse the court's denial of Dow Corning's motion to vacate. The court acknowledged the expert's indisputably distinguished career and expertise but concluded that it would not consider legal opinions that "attempt to tell the court what result to reach." That decision was not an abuse of the court's substantial discretion under Rule 702 of the Federal Rules of Evidence. See United States v. Whitted, 11 F.3d 782, 785 (8th Cir. 1993). In addition, giving the expert's opinions and conclusions full consideration would not change our view that umpire Lyon's ex parte contacts did not demonstrate evident partiality within the meaning of section 10(a)(2). Thus, striking portions of the affidavit was at most harmless error. See Williams v. Wal-Mart Stores, Inc., 922 F.2d 1357, 1360 (8th Cir. 1990).

**C. Limiting Dow Corning's Cross-Examination.** Dow Corning argues that Lyon exhibited evident partiality when he limited cross-examination of Safety's trigger-of-coverage expert witness, thereby concealing the weaknesses of Safety's position from the other panel members. This contention is without merit. Arbitrators have broad discretion to limit the cross-examination of witnesses at arbitration hearings. See Delta Mines, 280 F.3d at 823 & n.6; Hoteles Condado Beach, La Concha & Convention Center v. Union de Tronquistas Local 901, 763 F.2d 34, 38-39

-14-

(1st Cir. 1985). Umpire Lyon was well within his discretion in limiting Dow Corning's cross-examination of Safety's expert while giving Dow Corning wide latitude to present its affirmative case. Dow Corning has totally failed to establish that this procedural ruling demonstrated Lyon's evident partiality within the meaning of section 10(a)(2).

## IV. Conclusion

For the foregoing reasons, we direct the district court to modify its judgment so as to declare the arbitrators' decision of August 7 and 8, 2001 non-binding. In all other respects, the judgment denying Dow Corning's motion to vacate the arbitrators' decision is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.